BOYICH *v.* J. A. UTLEY CO.

1. Workmen's Compensation—Further Compensation—Res Judicata.

Employee who filed a second petition for further compensation is bound by findings of department of labor and industry on previous petition insofar as issues involved the same trauma disability, therein called traumatic neurosis and herein called traumatic hysteria, and disabling pain and suffering had been alleged, as the denial of an award on the previous petition was *res judicata* up to that time upon the physical and mental condition of plaintiff and barred him from subsequently having an award for any then-existing disability whether proof ·thereof had been offered or not.

Change of circumstances as affecting the principle of *res judicata*, see Restatement, Judgments, § 54, comment d. '

2. Same—Second Petition for Further Compensation.

   On a second petition for further compensation the department of labor and industry is limited to an award for physical disability of plaintiff, if any, lessening his earning capacity, arising out of the accident' and developed after denial of award on previous petition.

3. Judgment—Res Judicata—Issues Covered.

   The rule *res judicata* applies to former issues presented and covers as well existing applicable issues which could and should have been included.

4. Workmen's Compensation—Further Compensation—Hernia—Arthritis.

   Evidence adduced at hearing on carpenter's second petition for further compensation *held*, insufficient to establish either a hernia or disabling arthritic condition authorizing an award to him for physical injuries occasioned by the accident and developed after the last preceding hearing to the point of causing total disability to work and earn wages.

5. Same—Rehearings.

   The department of labor and industry has no power to grant a rehearing.

Appeal from Department of Labor and Industry. Submitted August 4, 1943. (Docket No. 19, Calendar No. 42,342.) Decided October 11, 1943. Rehearing denied November 29, 1943.

Despot Boyich presented his claim for compensation against J. A. Utley Company, employer, and American Mutual Liability Insurance Company, insurer. On petition for further compensation. Award to plaintiff. Defendants appeal. Reversed.

*Dann & Atlas,* for plaintiff.

*Alexander, McCaslin, Cholette & Buchanan* and *S. Gerard Conklin,* for defendant.

*Maurice Sugar* and *Benjamin Marcus, amici curiae,* on application for rehearing.

WIEST, J. Plaintiff, while employed as a carpenter by defendant J. A. Utley Company, on August 16, 1935, received an injury to his right side when struck by a flange on a traveling craneway and was thereby pushed against a wall, inflicting an abrasion on skin over the right chest wall and a contusion to the right shoulder. X-rays taken the day of the accident showed no fracture of any of the ribs and no fracture about the shoulder or anywhere else. Compensation was by agreement and stopped November 13, 1935, by a deputy commissioner upon a showing that he was able to resume his former employment. No appeal was taken. In October, 1936, plaintiff applied for further compensation, alleging progressive disability and neurosis since November 1, 1935, and asked to open and review all the matters and things involved. Proofs were taken before a deputy commissioner who granted $18 a week for total disability from November 26, 1935, to December 26, 1936, and to continue. Upon review by the department on July 6, 1937, the evidence before the deputy was fully considered and a finding made that "Despot Boyich is not physically incapacitated at this time as a result of his injury, and that whatever his mental condition may be, its origin is not based on trauma, or in any way the result of the accident of August 16, 1935," reversed the award of the deputy and found plaintiff not entitled to compensation. Plaintiff applied to this court for review by certiorari of such finding and denial of compensation and his application was denied September 7, 1937.

April 8, 1941, plaintiff filed a petition for further compensation and to open and review all matters and things pertaining thereto, alleging therein the injury he received in 1935, and that he "has been suffering from injuries to his head, back, chest, hips, sacroiliac, nervous and mental disorders and inter-

nal injuries," and that "since—, 19— (no year stated), he has been disabled in the employment in which he was engaged at the time of the said injury," and "has been unable to secure or perform employment." Defendants' answer denied plaintiff's allegations, pleaded 'former adjudication adverse to plaintiff's claims and asked that the petition be dismissed.

Proofs were taken before a deputy commissioner who awarded plaintiff compensation of $18 per week for total disability from July 7, 1937 (the next day after former denial), until further order of the department. Upon review by the department this award was affirmed. Upon leave granted, review is by certiorari.

Considering the allegations of disability in the petition denied in July, 1937, and those in the petition granted in January, 1943, the latter was but a rehearing of the former, the same trauma disability and disabling pain and suffering in the first hearing, and proofs thereon were open to plaintiff and he is bound by the findings there made. The department at the 1937 hearing found he was "not physically incapacitated at this time as a result of his injury, and that whatever his mental condition may be, its origin is not based on trauma or in any way the result of the accident of August 16, 1935." The evidence at that hearing disclosed that plaintiff, by reason of mental derangement, was incapacitated from work at his trade as a carpenter and from meeting its usual hazards. He has not worked since the accident in 1935, except in a few instances of no particular moment.

The crucial issue there presented and decided was whether plaintiff's mental disability was traumatic neurosis and the record presents the same issue under the name of traumatic hysteria in the instance at bar.

. The denial of an award in July, 1937, was *res judicata* up to that time upon the physical and mental condition of plaintiff and also barred plaintiff from subsequently having an award for any then-existing disability, whether he offered proof thereof or failed to do so. The department in the case at bar was limited to an award for physical disability of plaintiff, if any, lessening earning capacity, arising out of the accident and developed after denial of an award in July, 1937.

At the 1937 hearing plaintiff had other counsel but made no specific claim or proof of hernia, although under the present record it appears he then had a partial or undeveloped herniation. The rule *res judicata* applies to former issues presented and covers as well existing applicable issues which could and should have been included. *McDannel* v. *Black,* 270 Mich. 305, and cases there cited. Applicability of this rule is manifested by the following statement of the finding by the department in the instant case:

"We are further of the opinion that, had all of the aspects of the plaintiff's physical condition been inquired into at the previous hearing, it might have been determined that plaintiff was suffering from a traumatic neurosis as the records seem to indicate he was a well and healthy man and apparently he had been working steadily prior to the injury."

The department found at the last hearing "that the plaintiff is totally disabled from doing the work he was doing at the time of the injury from a physical standpoint, independent of the effect on his mental condition, and that this disability is causally related to the accident of August 16, 1935. We are further of the opinion that the mental condition is secondary and not the primary cause of plaintiff's disability."

The record has been read. Plaintiff testified that he had had the *totally disabling* pains since the date of the accident but the pains were worse, although after the hearing he had done a very little carpenter work. Plaintiff is neurotic and evidently has a compensation complex or, as the doctor at the Harper Hospital, who examined him on the day of the accident and observed his erratic behavior and claims, testified at the 1937 hearing, that plaintiff has a psychiatric personality.

Evidently the department based its findings upon the testimony of Dr. Fordus V. Hand, for it is stated in the opinion that:

"In the present hearing the plaintiff complains of bodily pains about the back and shoulders and further that he is suffering from a hernia. At the previous hearing the department did not go into the question of the arthritic condition in the plaintiff's back, spine, and shoulders, nor was the question of the hernia before them at that time. The record in this case from the Henry Ford Hospital shows that when plaintiff was confined there on October 22, 1935, he had a partial herniation. Dr. Hand, who was called on to testify for the plaintiff, stated that plaintiff was suffering from a bilateral inguinal hernia, arthritis of the spine, and a mental condition, and in his opinion the arthritic process was causally related to the accident and that the plaintiff's back caused him to suffer from pain. He was further of the opinion that the bilateral hernia, of itself, would disable the plaintiff from doing the work he was doing as a carpenter. It was also his opinion that plaintiff was suffering from a traumatic neurosis but that independent of the mental condition, plaintiff's physical condition was such as to disable him."

That doctor testified:

"*Q.* (By Mr. Atlas:) Doctor, will you state whether or not in your opinion, an accident such

as Mr. Boyich suffered in this case, could precipitate and aggravate an arthritic condition?

"*A.* Yes, it can very definitely.

"*Q.* Will you state whether or not, in your opinion, such an accident is causally related to a bilateral inguinal hernia condition?

"*A.* Yes, it could be causally related."

On cross-examination he testified:

"*Q.* What was the condition of the hypertrophic arthritis at the time that he received this accident in October of 1935—or August of 1935?

"*A.* I couldn't state, because I didn't see him at that time.

"*Q.* There is no way that you can tell from your examination of the X-ray whether the arthritis has been aggravated or not since this accident, is there?

"*A.* There is not, except that in these cases, from the history, you would think there would be an association with the accident.   *   *   *

"*Q.* Now, what is a hypertrophic arthritis, Doctor?

"*A.* It is a chronic form of arthritis characterized by proliferating process of the bone.

"*Q.* Caused by what?

"*A.* The cause is really unknown. It may be one of numerous things. It may be a metabolic disturbance. Some authorities believe it is on an infectious basis.

"*Q.* Would syphilis be one of the infectious bases?

"*A.* Yes.

"*Q.* Did you take a blood test of this man?

"*A.* Yes, I did.

"*Q.* And did it not run to four plus?

"*A.* It was reported by the board of health as positive. I do not know whether it was four plus or not.

"*Q.* He had a positive syphilis?

"*A.* Yes.

"*Q*. In fact, your opinion was that his mental condition was associated with this syphilis, is that right?

"*A*. Yes, it was.   *   *   *

"*Q*.   *   *   *  Do you want to say that he has a bilateral hernia?

"*A*. Yes, I do.

"*Q*. Or simply a weakness of the rings on both sides?

"*A*. He has an incomplete bilateral hernia, particularly on the right side.

"*Q*. How far has that progressed?

"*A*. Very early.

"*Q*. What?

"*A*. It is early.

"*Q*. Well, what do you mean 'early?' That is what I want to know. What do you mean?

"*A*. Well, of course, a hernia is a bulging through the inguinal canal, and in this case the rings are enlarged, but the sac has not come into the scrotum. Now, if it comes down into the scrotum, it is called complete, but if it doesn't, it is called incomplete, and in his case it is incomplete. *   *   *

"*Q*. But you would expect that if a hernia was going to result from an accident, it would make its appearance from within one or two weeks after the accident?

"*A*. Would I? I would expect—I had one myself, and I think I noticed it about two weeks after the accident.

"*Q*. From personal experience?

"*A*. Yes.   *   *   *

"*Q*. As a person gets older, some particular types especially, the rings are apt to relax, isn't that right?

"*A*. Yes.   *   *   *

"*Q*. With or without accident, is that correct?

"*A*. Yes.   *   *   *

"*Q*. As I understand you, you can't tell whether there is any change in that arthritic condition as a

result of an accident, without comparing the old X-rays and the present X-rays, is that correct? "A. Yes."

The evidence of Dr. Hand cannot be held to have established a hernia condition caused by the accident nor a disabling arthritic condition occasioned by the accident. An examination of the record, in our opinion, shows no change of condition authorizing an award of compensation for physical injuries occasioned by the accident and developed after the 1937 hearing to the point of causing total disability to work and earn wages.

The department of labor and industry has no power to grant a rehearing. *Fitzpatrick* v. *Olds Division of General Motors Corp.*, 282 Mich. 646. Many other cases to like effect could be cited.

The award is vacated, with costs to defendants.

BOYLES, C. J., and CHANDLER, NORTH, BUTZEL, and SHARPE, JJ., concurred with WIEST, J. STARR and BUSHNELL, JJ., concurred in the result.