LAICHALK v. CHICAGO PNEUMATIC TOOL CO.

1. WORKMEN'S COMPENSATION—RES JUDICATA—TOTAL DISABILITY—SIDE INJURY—SUBSEQUENT TRAUMATIC NEUROSIS.
    Finding of department of labor and industry that plaintiff was entitled to an award for total disability because he had suffered from traumatic neurosis since entry of an unappealed order stopping compensation which had been granted plaintiff for an injury to his side is sustained where no assertion had theretofore been made, and hence no adjudication, that plaintiff had suffered from malady now claimed.

2. SAME—TRAUMATIC NEUROSIS.

> In proceeding on a third petition for compensation, finding of fact by department of labor and industry that traumatic neurosis from which plaintiff was suffering was precipitated by injury to side *held,* supported by medical testimony.

Appeal from Department of Labor and Industry. Submitted January 4, 1944. (Docket No. 6, Calendar No. 42,337.) Decided April 3, 1944.

Joseph Laichalk presented his claim against Chicago Pneumatic Tool Company, employer, and Employers Liability Assurance Corporation, insurer, for compensation because of injuries sustained while in defendant's employ. On petition for further compensation. Award to plaintiff. Defendants appeal. Affirmed.

*A. C. Lappin* (*M. H. Shillman,* of counsel), for plaintiff.

*Alexander, McCaslin, Cholette & Buchanan* and *S. Gerard Conklin,* for defendants.

NORTH, C. J. This is an appeal by defendants from an award of compensation to plaintiff, based upon his claim that while in the employ of the defendant, Chicago Pneumatic Tool Company, he suffered a compensable accident as a result of which he is totally incapacitated by reason of traumatic psychoneurosis.

Except as otherwise indicated, we refer to Chicago Pneumatic Tool Company as the defendant. Prior to February 9, 1935, plaintiff had been in defendant's employ for upwards of six years. On the mentioned date plaintiff sustained a compensable accident under circumstances which he describes in the record as follows: "I was pulling a pan of stock

with 247 chisel blanks of alloyed steel which would
range from 400 to 600 pounds. I was pulling it back-
ward because I wasn't capable of pulling it for-
ward." Plaintiff testified that while pulling this
pan of stock he slipped and at once "felt something
tear" in his right side. Defendant filed a report of
a compensable accident, and on an agreement be-
tween the parties approved by the department on
March 15, 1935, compensation was to be paid for
total disability at $18 per week beginning on the
date of the accident and to continue during total
disability. Payments were made to May 11, 1935.
Defendant filed a petition to stop compensation
dated May 20, 1935. While this petition was pend-
ing before the deputy commissioner, plaintiff's at-
torney filed a stipulation wherein he stated that,
"being duly authorized so to do," he "agrees that
an award should be entered denying further com-
pensation upon the ground that disability does not
result from an accident." An order stopping com-
pensation, from which no appeal was taken, was ac-
cordingly entered on the 4th day of September, 1935.
The following is embodied in the deputy commis-
sioner's award:

"Remarks: Inasmuch as plaintiff's disability, if
any, is not due to the accident, the defendant's peti-
tion to stop compensation ought to be and the same
is hereby granted."

Plaintiff filed a petition for further compensation
which was subscribed and sworn to April 28, 1936.
Therein plaintiff set forth "that he is unable to do
any kind of work and has been so disabled since the
date of the accident and that his condition is worse
than it was at the time compensation was stopped."
Defendant's answer to this petition denied plaintiff
was entitled to further compensation. On Au-

gust 20, 1936, the foregoing petition was disposed of by granting plaintiff's motion to withdraw the same. Because plaintiff's petition of April 28, 1936, was withdrawn, nothing was adjudicated in that proceeding, and it has no effect on plaintiff's present petition.

Plaintiff instituted no subsequent proceeding until he filed his present petition for further compensation which was subscribed and sworn to February 10, 1941. Defendant answered, denying plaintiff's claim for further compensation, and among other defenses urged that the award of September 4, 1935, is *res judicata* of plaintiff's present petition. Upon hearing before the deputy commissioner plaintiff's petition was dismissed "for the reason that the unappealed award of September 4, 1935, adjudicated that the plaintiff's then disability, which I now find to be the same disability, was not related to his accident." On review by the department of labor and industry the deputy commissioner's award was reversed and plaintiff awarded compensation for total disability at the rate of $18 per week from September 5, 1935, until the further order of the department, with the exception of certain short intervals during which plaintiff was employed. The foregoing award was based on the department's finding that plaintiff has suffered from traumatic neurosis since 1935 and that when plaintiff's case was before the department on former occasions neither he nor his attorneys were aware of plaintiff's neurotic condition; and further that plaintiff's "mental derangement" was not placed in issue at any of the former hearings and therefore there could not be *res judicata* of that issue. In consequence thereof compensation was awarded plaintiff, notwithstanding defendant's contention that the unappealed award of

September 4, 1935, was *res judicata* of the instant petition.

Under the record before us the above holding must be affirmed. As already noted plaintiff sustained a compensable injury February 9, 1935. Defendant through its insurer promptly agreed to an award of compensation for total disability which was paid until May, 1935. In the agreement filed with the department and upon which the award was based the sole injury set forth was "injured side." May 20, 1935, defendant filed a petition to stop. Aside from writing a letter to the department wherein plaintiff stated he was still disabled from the accident, he made no answer to defendant's petition to stop compensation, although plaintiff and a physician as his witness testified at the hearing. The order finally entered was based on the stipulation of plaintiff's counsel that "disability does not result from an accident." It is important to note that thus far in the proceedings between plaintiff and defendant the former had not asserted that he was entitled to compensation on the ground that he was suffering from traumatic psychoneurosis. It necessarily follows that whether plaintiff was suffering from neurosis under circumstances entitling him to compensation was not adjudicated in the prior proceedings because that issue was not presented; especially in view of the fact that the department found in the instant proceedings plaintiff's disability of that character was not then known to plaintiff or his counsel. In so holding we are not unmindful that it appears in the record plaintiff had been in the Ford Hospital where his condition was under observation and investigation, and that in hospital reports some reference was made to plaintiff's neurotic condition. Nor are we unmindful that on the hearing of defendant's petition to stop, Dr. Caldwell, upon being asked

whether plaintiff herein "was malingering at all," testified:

"I do not believe so; but I believe he borders on the type of the individual who is aesthetic (asthenic). I believe he believes himself to have a disability which we cannot find an objective reason to substantiate. * * * In other words he believes himself to have a disability for which we can find no authentic objective reason."

The fact still remains that in each of the proceedings prior to and including the order of September 4, 1935, stopping compensation, adjudication, so far as disclosed by the record, turned entirely upon whether plaintiff had physical injuries in consequence of which he was disabled. In this aspect *Boyich v. J. A. Utley Co.*, 306 Mich. 625, upon which defendant relies, must be distinguished from the case now under consideration. In the *Boyich Case* prior to the proceedings before the department which were reviewed in this Court, there had been denial of the employee's petition for further compensation wherein he asserted neurotic disability, and it was adjudicated that there was no causal relation between Boyich's accident and his claimed neurosis. Clearly this was an adjudication of the same issue presented in Boyich's later petition. But in the instant petition for further compensation plaintiff alleges: "that he is and has been unable to work as a result of the injuries he suffered and profound traumatic psychoneurosis which the accident caused." This is the first time that plaintiff in his proceedings to obtain compensation has asserted a right thereto on the ground that he is disabled by traumatic neurosis or psychoneurosis caused by the accident. As noted above under such a record it cannot be held that the award of September 4, 1935, was *res judicata* of the present proceedings.

The only other question raised by appellant is whether plaintiff's disability, if any, is collateral to plaintiff's injury. Whether plaintiff's present alleged disability is only collateral to the injury he received in February, 1935, or whether there is a causal relation between the two presents a question of fact. There is testimony supporting the following from the department's finding:

"He (Dr. Hurst), further definitely testified that the injury of February 9, 1935, was the precipitating factor in the cause of the plaintiff's mental condition and that plaintiff had a definite traumatic neurosis. He further indicated that it could not be considered as collateral and due to worry."

We are bound by the foregoing finding by the department of labor and industry of this fact issue. The award of the department is affirmed, with costs to appellee.

STARR, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred with NORTH, C. J.

WIEST, J. (*concurring in result*). If it were permissible to review the facts I would be for reversal of the award but, under constraint to accept the same as found by the department, I am compelled to concur in the result.