GOSE v MONROE AUTO EQUIPMENT COMPANY

SANDERS v GENERAL MOTORS CORPORATION

Docket Nos. 60752, 60759, 60826, 60839. Argued December 5, 1978 (Calendar Nos. 7-10).—Decided June 27, 1980.

Defendant Monroe Auto Equipment Company paid plaintiff Tipton G. Gose workers' compensation benefits from 1953 to 1967, the statutory maximum of 750 weeks, for an injury to his left leg, which was eventually amputated. In 1968 plaintiff Gose claimed further compensation benefits for the industrial loss of both legs, work-related insanity, total and permanent disability, and related injuries. Some proofs concerning the plaintiff's mental condition were offered at the hearing on the claim, but at the close of the hearing, the plaintiff's attorney withdrew the claim of insanity without objection by the defendant. The Workmen's Compensation Appeal Board ordered payment of additional benefits by the defendant employer but reversed an award against the Second Injury Fund. In 1972 the plaintiff claimed additional benefits for the same injuries as in his 1968 claim. There was no allegation that his condition had changed since the hearing in 1969. The hearing referee found that plaintiff Gose was insane, but that his claim for additional benefits was barred by the doctrine of res judicata. The Workmen's Compensation Appeal Board found that insanity was a "triable issue" in the 1969 proceedings and that the doctrine of res judicata precluded its reassertion. The Court of Appeals, Danhof, C.J., and Bronson and M. J. Kelly, JJ., peremptorily

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 10-12, 14, 15, 17, 19, 20] 82 Am Jur 2d, Workmen's Compensation § 584.

[3, 13] 46 Am Jur 2d, Judgments § 394 et seq.

[4] 82 Am Jur 2d, Workmen's Compensation § 338.

[5, 8] 82 Am Jur 2d, Workmen's Compensation § 469 et seq.

[6] 46 Am Jur 2d, Judgments § 395.

[7] 82 Am Jur 2d, Workmen's Compensation § 572 et seq.

[9, 21, 22] 82 Am Jur 2d, Workmen's Compensation §§ 584, 591.

[16] 2 Am Jur 2d, Administrative Law § 645.

[18] 81 Am Jur 2d, Workmen's Compensation §§ 340, 343, 584.

[23] 46 Am Jur 2d, Judgments § 438 et seq.

reversed and remanded for consideration of the insanity claim on its merits (Docket No. 77-3216). Defendants Monroe Auto Equipment Company, its insurer, Michigan Mutual Liability Company, and the Second Injury Fund appeal.

Plaintiff Louise Sanders claimed workers' compensation benefits for total and permanent disability against her employer, General Motors Corporation. In 1968, a hearing referee awarded plaintiff Sanders 500 weeks of benefits but found that she was not permanently and totally disabled by the loss of the use of her legs. In 1974 the plaintiff was awarded additional benefits for total and permanent disability. The second claim was reversed by the Workmen's Compensation Appeal Board on the ground of res judicata. The Court of Appeals, Danhof, C.J., and Allen and Heading, JJ., remanded to the Workmen's Compensation Appeal Board to find whether the permanence of the plaintiff's injury was adjudicable in 1968 (Docket No. 31376). Plaintiff and defendants General Motors Corporation and Second Injury Fund appeal.

In an opinion by Justice Kavanagh, concurred in by Chief Justice Coleman and Justices Fitzgerald and Ryan, it was *held:*

The doctrine of res judicata applies in workers' compensation cases, as in others, to bar those claims actually litigated and also those arising out of the same transaction which could have been brought, but were not.

1. The concerns behind the principle of res judicata, economy of judicial resources and finality of litigation, apply equally to workers' compensation proceedings and other actions. The Court has always maintained that the scope of the doctrine should be the same in each area, but has not been consistent in defining that scope. The Court has recently acknowledged the conflicting language and chosen the "broad" rule that bars questions previously litigated and those claims arising out of the same transaction which the plaintiff could have brought in the first action but did not.

2. The Court's previous declaration that the doctrine applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in the first proceeding, is not an expression of a "narrow" rule but a simple affirmation that the rule of res judicata, whatever its breadth, applies equally to adjudications of facts and law. Barring a change, neither can be relitigated.

3. The argument that the scope of the rule of res judicata should be narrowed is not persuasive. A workmen's compensation award represents an adjudication as to the condition of the injured workman at the time it is entered. Disability benefits

are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. A claimant's entitlement to such benefits depends upon the circumstances at the time of application and payment. The requirement that he present all of his available claims in a single proceeding is consistent with this purpose of adjudicating the worker's needs. The remedial character of the legislation would scarcely be enhanced by a construction which would authorize piecemeal compensation for an injury.

4. Central to any application of the rule of res judicata is the principle that one may not relitigate the identical question once determined. The adjudicative process would fail to serve its social function if it did not have this effect. Plaintiff Sanders' second claim is barred because she is asserting the same claim.

5. Plaintiff Gose's second claim is also barred because it is the same as the first. There can be but one claim for total and permanent disability. Although the Worker's Disability Compensation Act recognizes seven alternative bases for the claim, evidence establishing more than one basis would occasion only one award. Gose's second petition, although upon a different basis (insanity instead of the industrial loss of the use of both legs), nonetheless seeks workers' compensation for the same claim of total and permanent disability arising from injury to his left ankle. He was obligated to advance in a single proceeding every alternative basis which could support this claim. Failure to do so bars relitigation of the claim previously resolved against him.

The decision of the Court of Appeals is reversed in each case.

Justice Williams, joined by Justice Moody, would hold in *Gose* that the plaintiff may litigate his claim, but that the claim in *Sanders* is barred by the doctrine of res judicata.

1. The policy of res judicata favoring finality is not always consistent with the remedial purpose of workers' compensation benefits to maintain the fiscal integrity of persons whose wage-earning capacity has been suspended or terminated. Therefore, the doctrine of res judicata is given a limited application to workers' compensation cases: absent a change in the claimant's physical condition, the doctrine of res judicata applies to facts previously litigated and to questions of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation. It does not apply to questions which could have been adjudicated but were not.

2. The claim of benefits for insanity by plaintiff Gose is not barred by the doctrine of res judicata. It is not the raising of a

matter, but the adjudication or decision of it, which requires application of the doctrine as a bar. The doctrine rests upon the principle that a question once determined by a court of competent jurisdiction by a judgment on the merits is forever settled so far as the litigants are concerned. The fact that the plaintiff's insanity claim was found to be a "triable issue" which could have been adjudicated at an earlier hearing is not a basis for invoking the doctrine of res judicata within the context of workers' compensation.

3. Complete evidence as to plaintiff Sanders' leg disability was presented at the first hearing in 1968 and the hearing referee made specific findings on it. Absent a change in the claimant's physical condition, these findings are res judicata. Although plaintiff Sanders asserts that her physical condition had, in fact, changed between the first and second hearing, the appeal board specifically found as a matter of fact that no such change occurred. Because a basis exists in the record for this finding it is conclusive and not reviewable by the Court.

4. There is nothing in the record of the first hearing in *Sanders* to indicate an intention to postpone or defer final determination. Furthermore, a plaintiff may not concede an issue of law necessarily determinative of and included in the judgment and then, after another plaintiff has successfully raised the issue not contested, ask for relief.

5. Plaintiff Sanders argues that the first hearing solely determined her disability as of the injury in 1960. However, the decision of the referee at the first hearing designates April 15, 1963, the last day of work, as the date of disability. There was a prior determination by the appeal board of all issues now asserted; therefore, plaintiff Sanders' present claim is barred by application of res judicata.

Justice Levin dissented. The statement that in workers' compensation cases as well as in general litigation the doctrine of res judicata bars all issues adjudicated or adjudicable in respect to a single claim does not decide *Gose*. Whether one endorses a "narrow" or "broad" application of res judicata, the question presented is what constitutes a "claim". In *Gose* the Court states that the seven alternative bases of compensation for total and permanent disability enumerated in the statute are but one claim. Justice Levin would hold that each alternative basis is a separate claim and therefore that litigation of one does not preclude subsequent litigation of another. In *Sanders* the Court states that the second petition is barred because she is asserting the same claim previously adjudicated against her, but fails to respond to her contention that her

petition is within exceptions to the preclusion which ordinarily results from previous adjudication. Justice Levin would hold that her case falls within recognized exceptions to the general rule.

1. Gose's petition based on insanity is not barred by res judicata unless that petition and his previous petition based on loss of industrial use of both legs seek to enforce a single claim. The former statutory single claim based on total and permanent disability in fact was abolished in 1954 when the Legislature substituted seven specifically enumerated alternatives as the exclusive bases for recovery. While the seven alternative bases continue to be referred to collectively as "total and permanent disability", those words no longer have any operative effect and their deletion would not change the meaning of the act; with or without them, the act provides that in the seven described situations the Second Injury Fund shall pay differential benefits and there is an 800-week conclusive presumption of disability. The Court states that all matters "arising out of the same transaction" must be presented at one time to avoid "piecemeal compensation for an injury", without explaining why "transaction" necessarily defines the scope of the claim, or what is meant by "same transaction". The statement by the Court that requiring the worker to present all of his available claims in a single proceeding is consistent with the purpose of adjudicating the worker's needs fails to consider the history of and present practice in the administration of the workers' compensation law and overstates the scope of the preclusion resulting from prior litigation. A workers' compensation claimant is not obliged to present all claims arising out of a single injury in one proceeding. Renewed litigation and piecemeal compensation are characteristics of workers' compensation proceedings.

2. That there can be but one *award* for total and permanent disability does not mean that there can be but one *claim* for such compensation arising from a single accident. Generally, there is but one right to compensation for a loss, and a judgment successful in securing compensation will merge with the loss, not because a plaintiff is entitled to only one chance to secure damages, but because he is entitled to be compensated only once. The question here is whether a claim will be barred where the plaintiff has failed in a prior suit, and that requires that it be determined if the second suit is based on the same claim. Under the workers' compensation act a cause of action or claim is the sustaining of a compensable disability by the employee. Compensable disabilities are strictly and narrowly

defined by the act and are the basis of any entitlement. Gose's claim is not for total and permanent disability arising from injury to his left ankle. He may have been totally and permanently disabled as a result of the injury to his ankle, but he would have no claim to compensation for total and permanent disability unless he sustained an injury specifically enumerated under the statute, e.g., loss of industrial use of both legs or incurable insanity. His accident allegedly left him with two compensable disabilities, loss of industrial use and insanity, and therefore two claims, which he was not obligated to litigate together.

3. The inquiry in a workers' compensation case is generally whether a disability compensable under the act has been established and not whether or how the injury occurred. It is the disability, rather than the injury or accident, which best defines the scope of a workers' compensation claim. The contest in most cases will center on whether the worker suffers from the disability he alleges and whether that disability is due to the accident or exposure, not on the circumstances of the accident or exposure. Adjudication in one proceeding of multiple bases for recovery would be unruly; all that the various claims would have in common is that they involve injury to the same employee. For each compensable disability alleged, the compensable condition would have to be proved, as would its work-relatedness. The result would be a series of essentially separate cases all being heard together. This additional investment of time and money will prove to be unnecessary if the employee prevails on what he perceived to be his strongest claim. Had he not been required to bring all ripe claims, he would have petitioned on that claim alone, secured benefits, and never put himself or his employer to proofs on the other claims. Because the common area of contest is so small when compared to the areas of separate issues and proofs, the common origin of disabilities in a single injury or accident should not be the measure of a "claim" for purposes of res judicata. When an employee alleges a compensable disability, he is required to present all issues related to that claim, but where he has suffered two compensable disabilities he should not be required to seek compensation in a single petition, even when the disabilities originate in a single accident or occurrence.

4. Gose's claim that he is incurably insane was not adjudicated in the first hearing, nor was it abandoned. It was withdrawn by specific request without objection from the lawyer for the employer, whose silence waived any right to assert prejudice in the future. The defense of res judicata is for the

defendant's protection and he may not assert it where he has failed to make proper objection to the splitting of a claim. Had the employer objected to the withdrawal, Gose would have been warned that he might, by the withdrawal, be said to be abandoning the insanity claim altogether. Instead, he was made to believe that there would be no barrier to his submission of the claim at a later date. The employer has waived any defense based on res judicata.

5. A change in the law, like a change in facts, can eliminate the bar of res judicata. Had the claimant in *Sanders* not raised the issue of total and permanent disability in her first petition, she would not now be barred, because there would never have been a determination that she was not within the statutory meaning of that phrase. A doctrine of res judicata developed in a case where a claimant had conceded a point of law and then attempted to reopen the issue almost two decades later when the law had been changed by the efforts of others should not be extended to this case, in which the claimant advanced a legal interpretation later accepted by the courts, but was awarded benefits on another theory and chose not to appeal the award. The claim for additional benefits should be judged under the legal standard operative at the time the claim is made, notwithstanding that an earlier petition upon the same claim failed under a different and more restrictive legal standard.

6. The determination at the first hearing in *Sanders* that the claimant had not established loss of industrial use of both legs was not appealed, because the referee found that she had established a compensable total disability due to an occupational back disability. Because she was awarded compensation, other than differential benefits payable by the Second Injury Fund, she had no incentive to appeal the unfavorable determination on the issue of total and permanent disability. An issue resolved in previous litigation should not be foreclosed in subsequent litigation between the parties where the party against whom the issue is decided did not have an incentive to obtain a full and fair adjudication in the first proceeding. The policies which the doctrine of res judicata seeks to serve do not require that Sanders be denied benefits which the testimony and the referee's finding at the second hearing indicate she is entitled to receive. Finality is desirable, but the nature of workers' compensation is such that it is not a controlling consideration. Except possibly for compensation payable for a fixed number of weeks for a specific loss, an award or denial of benefits may always be reopened if there has been a change in physical condition, status, or other circumstances. Workers'

compensation is income maintenance payable periodically, and when the factors giving rise to the entitlement or justifying denial change, the result, too, should change.

80 Mich App 190; 263 NW2d 329 (1977) reversed.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — RES JUDICATA.

The concerns behind the principle of res judicata, economy of judicial resources and finality of litigation, apply equally to workers' compensation proceedings and other actions.

2. WORKERS' COMPENSATION — RES JUDICATA.

The doctrine of res judicata bars a second claim for workers' compensation if the same question was actually litigated in a first proceeding; it bars as well those claims arising out of the same transaction which the claimant could have brought in the first proceeding, but did not.

3. JUDGMENT — RES JUDICATA — QUESTION OF FACT — QUESTION OF LAW.

The doctrine of res judicata applies, in the absence of a change in the facts or the law, equally to questions of fact previously litigated and to questions of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation.

4. WORKERS' COMPENSATION — RES JUDICATA.

A workers' compensation award represents an adjudication as to the condition of the injured workman at the time it is entered; compensation benefits are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated, and a claimant's entitlement to such benefits depends upon the circumstances at the time of application and payment.

5. WORKERS' COMPENSATION — RES JUDICATA.

The requirement that a workers' compensation claimant present all of his available claims in a single proceeding is consistent with the statutory purpose of adjudicating the worker's needs; the remedial character of the legislation, if affected at all by the doctrine of res judicata, would scarcely be enhanced by a construction which would authorize piecemeal compensation for an injury.

6. JUDGMENT — RES JUDICATA.

Central to any application of the rule of res judicata is the

principle that one may not relitigate the identical question once determined; the adjudicative process would fail to serve its social function if it did not have this effect.

7. WORKERS' COMPENSATION — TOTAL DISABILITY.

There can be but one workers' compensation claim for total and permanent disability; although the Worker's Disability Compensation Act recognizes seven alternative bases for it, evidence establishing more than one basis would occasion only one award (MCL 418.361[2]; MSA 17.237[361][2]).

8. WORKERS' COMPENSATION — RES JUDICATA — TOTAL DISABILITY.

A workers' compensation claimant was obligated to advance in a single proceeding every alternative basis which could support a claim of total and permanent disability arising from an injury to his left ankle; failure to claim a total and permanent disability on the basis of insanity in the first petition as well as industrial loss of the use of both legs bars relitigation of the claim previously resolved against him (MCL 418.361[2]; MSA 17.237[361][2]).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY WILLIAMS, J.

9. WORKERS' COMPENSATION — RES JUDICATA.

*The doctrine of res judicata applies to workers' compensation proceedings, absent a change in the claimant's physical condition.*

10. WORKERS' COMPENSATION — RES JUDICATA.

*The policy of the doctrine of res judicata favoring finality is not always consistent with the remedial purpose of workers' compensation legislation to maintain the fiscal integrity of persons whose wage-earning capacity has been suspended or terminated; therefore, the doctrine of res judicata is given a more limited application to workers' compensation cases than to other cases.*

11. WORKERS' COMPENSATION — RES JUDICATA — FINDINGS OF FACT — QUESTIONS OF LAW.

*The doctrine of res judicata applies in workers' compensation cases to facts previously litigated and to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation; it does not apply to questions which could have been adjudicated but were not.*

12. WORKERS' COMPENSATION — RES JUDICATA.

It is the adjudication or decision of a workers' compensation claim, not the raising of the matter, which requires application of the bar of the doctrine of res judicata at a later hearing on the same claim; the fact that a plaintiff's claim for workers' compensation for a mental condition was a "triable issue" which could have been adjudicated at a first hearing, at which other claims were adjudicated and the issue of the plaintiff's mental condition was raised but was withdrawn before it was adjudicated without objection by the defendant, is not a basis for invoking the doctrine at a later hearing based on the claim for his mental condition.

13. JUDGMENT — RES JUDICATA.

The doctrine of res judicata rests upon the principle that a question once determined by a court of competent jurisdiction by a judgment on the merits is forever settled so far as the litigants are concerned.

14. WORKERS' COMPENSATION — RES JUDICATA.

A claim for workers' compensation benefits for total and permanent disability is barred by the doctrine of res judicata where complete evidence as to the plaintiff's disability was presented at a previous hearing and the hearing referee made a specific finding that the plaintiff had not sustained the burden of establishing a permanent and total disability, and there was no change in the claimant's physical condition following that finding.

15. WORKERS' COMPENSATION — RES JUDICATA.

A claimant may not concede an issue of law, necessarily determinative of and included in a judgment in a claim for workers' compensation, and then, after another claimant has successfully raised that issue, ask for relief; the doctrine of res judicata bars such a result.

16. WORKERS' COMPENSATION — FINDINGS OF FACT — APPEAL AND ERROR.

Findings by the Workers' Compensation Appeal Board that a claimant's physical condition had not changed between the time of a first and second hearing on the same claim for benefits, and that the last day of work rather than the date of the injury was the date of disability are conclusive and not reviewable by the courts where there exists a basis in the record for the findings (Const 1963, art 6, § 28).

DISSENTING OPINION BY LEVIN, J.

17. WORKERS' COMPENSATION — RES JUDICATA.

*The statement that in a subsequent proceeding in a workers'
compensation case the doctrine of res judicata bars all issues
adjudicated or adjudicable by an earlier determination in re-
spect to a single claim still presents the question what consti-
tutes a "claim".*

18. WORKERS' COMPENSATION — RES JUDICATA — TOTAL DISABILITY.

*Each of the seven specifically enumerated alternatives described
in the Worker's Disability Compensation Act as the bases of
compensation for total and permanent disability is a separate
claim; there is no longer a single claim for total and permanent
disability and therefore litigation of one basis (e.g., incurable
insanity) does not preclude subsequent litigation of another
(e.g., loss of industrial use of both legs) under the doctrine of
res judicata (MCL 418.361[2]; MSA 17.237[361][2]).*

19. WORKERS' COMPENSATION — RES JUDICATA.

*Presentation of all workers' compensation claims arising out of
the same injury or transaction in one proceeding should not be
required under the doctrine of res judicata because it is the
disability, rather than the injury, which best defines the scope
of a workers' compensation claim and such a requirement
makes the adjudication a series of essentially separate cases all
being heard together, in which the only common areas of proof
are that they all involved injury to the same worker.*

20. WORKERS' COMPENSATION — RES JUDICATA — WAIVER OF DEFENSE.

*An employer has waived any defense based on res judicata in a
petition for workers' compensation where a claim that a
worker was incurably insane was withdrawn with the specific
request that no decision be made in that regard, and a lawyer
for the employer was present when the claim was withdrawn
and remained silent as to its withdrawal; the defense of res
judicata may be waived by the employer because it is for the
defendant's protection, and the employer may not assert the
defense where it has failed to make a proper objection to the
splitting of a claim.*

21. WORKERS' COMPENSATION — RES JUDICATA — QUESTION OF LAW.

*A change in law, statutory or judge-made, like a change in fact,
can effect a change in circumstances justifying, upon applica-
tion of the worker or employer, an award of workers' compen-*

*sation benefits, or termination or suspension of benefits previously awarded.*

22. Workers' Compensation — Res Judicata — Question of Law.

*A claimant who petitioned in 1968 for workers' compensation benefits alleging loss of industrial use of both legs and advanced a legal interpretation later accepted by the courts, whose petition was awarded upon another theory, and who chose not to appeal that favorable award is not barred by the doctrine of res judicata from later petitioning for further benefits when the interpretation previously advanced becomes law (MCL 418.361[2]; MSA 17.237[361][2]).*

23. Judgment — Res Judicata.

*An issue resolved in previous litigation should not be foreclosed in subsequent litigation between the parties where the party against whom the issue is decided did not have an incentive to obtain a full and fair adjudication in the first proceeding.*

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.,* for plaintiff Gose.

*Mitchell, Vilella & Houk, P.C.,* for plaintiff Sanders.

*LeVasseur, Mitseff, Egan & Capp, P.C.,* for defendants Monroe Auto Equipment Company and Michigan Mutual Insurance Company.

*Anderson, Green, McKay & Roberts, P.C.,* for defendant General Motors Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for defendant Second Injury Fund.

Kavanagh, J. We granted leave to appeal to determine the effect of the doctrine of res judicata upon these workers' compensation claims.

Justice WILLIAMS has stated the facts in both cases.

I

The parties do not question that the doctrine of res judicata applies to workers' compensation proceedings; they differ only as to its scope. Plaintiffs assert that only those claims actually litigated in a prior proceeding are barred from relitigation. Defendants argue that res judicata bars those claims actually litigated and also those arising out of the same transaction which plaintiff could have brought in the first action, but did not.

The concerns behind the res judicata principle—economy of judicial resources and finality of litigation—apply equally to workers' compensation proceedings and other actions. 3 Larson, Workmen's Compensation Law, § 79.71, p 15-307. While this Court has always maintained that the scope of the doctrine should be the same in each area,[1] we have not been consistent in defining that scope.

---

[1] The Court of Appeals held otherwise in *Stokes v Lakey Foundry Corp,* 20 Mich App 217, 219; 173 NW2d 832 (1969):

"Except for workmen's compensation cases, Michigan has held that the doctrine of res judicata applies not only to issues which were determined on the merits, but also to matters which the parties had the opportunity to present for adjudication on the merits. [Citations omitted.]

"While the doctrine of res judicata does apply to workmen's compensation cases *(Willis v Michigan Standard Alloy Casting,* 367 Mich 140 [116 NW2d 222 (1962)]), in Michigan it has been limited to issues that were actually litigated as a matter of fact. *Hebert v Ford Motor Co,* 285 Mich 607 [281 NW 374 (1938)]; *White v Michigan Consolidated Gas Co,* 352 Mich 201 [89 NW2d 439 (1958)]."

A close reading of both *Hebert* and *White* shows that neither opinion delineated a rule *unique* to workers' compensation proceedings; they merely recited a narrow application of the rule, as opposed to a broad version, discussed *infra.* Moreover, in each case, res judicata was inapplicable: two separate injuries involving two separate transactions were at issue in *Hebert,* and in *White* a final determination on the merits had not been made in the first proceeding.

Our opinions have endorsed both a narrow and a broad application of the rule. Narrow application bars a second action only if the same question was actually litigated in the first proceeding.[2] Broad application bars as well those claims arising out of the same transaction which plaintiff could have brought, but did not.[3] In recent opinions, we have acknowledged the conflicting language and opted for the broad rule. *Gursten v Kenney,* 375 Mich 330, 334-335; 134 NW2d 764 (1965) (order of dismissal); *Curry v Detroit,* 394 Mich 327, 332; 231 NW2d 57 (1975) (order of summary dismissal).

Our workers' compensation cases also contain conflicting language.[4] Once again, we endorsed the broad rule in our most recent pronouncement:

"This Court has cited with approval the rule set forth in 58 Am Jur, Workmen's Compensation, § 508. See *White v Michigan Consolidated Gas Co,* 352 Mich 201; 89 NW2d 439 (1958). This section states:

" 'The general rule with respect to the effect upon the application of the principles of res judicata to decisions under workmen's compensation acts, of a provision authorizing the modification of an award upon a showing of a change in the employee's condition, is that a compensation award is an adjudication as to the condition of the injured workman at the time it is entered, *and conclusive of all matters adjudicable at that time,* but it is not an adjudication as to the claimant's future

---

[2] *MacKenzie v Union Guardian Trust Co,* 262 Mich 563; 247 NW 914 (1933); *Meister v Dillon,* 324 Mich 389; 37 NW2d 146 (1949), and *Detroit Trust Co v Furbeck,* 324 Mich 401; 37 NW2d 151 (1949).

[3] *Harrington v Huff & Mitchell Co,* 155 Mich 139; 118 NW 924 (1908); *McDannel v Black,* 270 Mich 305; 259 NW 40 (1935); *Strech v Blissfield Community Schools Dist,* 357 Mich 620; 99 NW2d 545 (1959).

[4] Compare *Hebert v Ford Motor Co,* 285 Mich 607, 613; 281 NW 374 (1938), and *White v Michigan Consolidated Gas Co,* 352 Mich 201, 211; 89 NW2d 439 (1958), with *Kubiak v Briggs Manufacturing Co,* 286 Mich 329, 333-334; 282 NW 427 (1938), *Boyich v J A Utley Co,* 306 Mich 625, 629; 11 NW2d 267 (1943), and *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976).

condition and does not preclude subsequent awards or
subsequent modifications of the original award upon a
showing that the employee's physical condition has
changed. * * *' " *Hlady v Wolverine Bolt Co,* 393 Mich
368, 375-376; 224 NW2d 856 (1975) (emphasis supplied
in *Hlady*).

I do not share the view expressed in Justice
WILLIAMS' opinion that we applied a "narrow rule"
in *Hlady.*

There was no disagreement there that res judi-
cata barred all facts adjudicated or adjudicable at
the time of the first hearing. There was also no
disagreement that the law applied to those facts at
such hearing *if unchanged* would also preclude
subsequent redetermination.

We disagreed only over whether a *change* in the
law—as would a *change* in facts—permits a subse-
quent redetermination of an issue.

Thus while we disagreed over whether the rule
of res judicata should be applied, there was no
dispute over the scope of its coverage if applicable.

The expression in *Hlady:*

"the doctrine of res judicata applies not only to facts
previously litigated, but also to points of law which
were necessarily adjudicated in determining and decid-
ing the subject matter of the litigation", *Hlady, supra,*
376,

is no expression of a "narrow" rule but a simple
affirmation that the rule of res judicata, whatever
its breadth, applies equally to facts and law. Bar-
ring a change, under the doctrine we all agree
neither can be relitigated.

I am not persuaded that the scope of the rule
should be narrowed, as plaintiffs urge. A compen-
sation award represents " 'an adjudication as to

the condition of the injured workman at the time
it is entered.'" *Theodore v Packing Materials, Inc,*
396 Mich 152, 158; 240 NW2d 255 (1976), citing 58
Am Jur, *supra.* Disability benefits "are a form of
income maintenance for persons whose wage-earn-
ing capacity has been suspended or terminated. A
claimant's entitlement to such benefits depends on
the circumstances at the time of application and
payment". *Hlady, supra,* 391 (LEVIN, J., concur-
ring).

The requirement that he present all of his avail-
able claims in a single proceeding is consistent
with this purpose of adjudicating the worker's
needs. The remedial character of the legislation, if
affected at all by this rubric, would scarcely be
enhanced by a construction which would authorize
piecemeal compensation for an injury.

## II

Central to any application of the res judicata
rule—narrow or broad—is the principle that one
may not relitigate the identical question once
determined. The adjudicative process would fail to
serve its social function if it did not have this
effect. James & Hazard, Civil Procedure (Boston:
Little, Brown & Co, 1977), ch 11, p 530.

I agree with Justice WILLIAMS that plaintiff
Sanders' second petition is barred because she is
asserting the same claim.[5]

---

[5] Plaintiff's original claim was for total and permanent disablement.
The referee allowed the claim for total but not permanent disable-
ment. The proofs of permanency were inadequate. Plaintiff seeks to
avoid this adjudication by claiming it was premature and therefore
ineffective on the theory that a determination of permanency could
only be sought after 496 weeks had elapsed from the date of injury.
This is a misreading and misinterpretation of the statutory language:
"such permanency shall be determined not less than 30 days before
the expiration of 500 weeks from the date of injury". MCL
418.361(2)(g); MSA 17.237(361)(2)(g). This provision is not a statute of

I disagree with his conclusion that plaintiff Gose's claim should not be barred for the same reason.

There can be but one claim for total and permanent disability. Although the statute recognizes seven alternative bases for it,[6] evidence establishing more than one basis would occasion only one award.

Gose's second petition, although upon a different basis (insanity instead of industrial loss of use of both legs), nonetheless seeks compensation for the same claim of total and permanent disability arising from injury to his left ankle. He was obligated to advance in a single proceeding every alternative basis which could support this claim. Failure to do so bars relitigation of the claim previously resolved against him. Restatement Judgments, 2d (Tentative Draft No 5, 1978), § 61, comment c, p 144.

We reverse and remand in both cases for entry of an order denying benefits based on res judicata.

COLEMAN, C.J., and FITZGERALD and RYAN, JJ., concurred with KAVANAGH, J.

---

limitation determining when a claim can be asserted, but rather a requirement that the permanency of the disability must be determined at a date within about 496 weeks of the date of injury.

[6] "(2) Total and permanent disability, compensation for which is provided in section 351 means:

"(a) Total and permanent loss of sight of both eyes.

"(b) Loss of both legs or both feet at or above the ankle.

"(c) Loss of both arms or both hands at or above the wrist.

"(d) Loss of any 2 of the members or faculties enumerated in (a), (b) or (c).

"(e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(f) Incurable insanity or imbecility.

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury." MCL 418.361(2); MSA 17.237(361)(2).

Williams, J. We are asked in these two cases to revisit and more explicitly define the application of the doctrine of res judicata to workers' compensation law. This Court most recently faced this task in *Hlady v Wolverine Bolt Co*, 393 Mich 368; 224 NW2d 856 (1975), in which res judicata was found to control, and *Morgan v Freedman Artcraft*, 401 Mich 54; 257 NW2d 85 (1977), in which it was not.

In *Gose*, the issue is whether a claim based on insanity which was withdrawn before adjudication can be re-petitioned in a subsequent case without being barred by res judicata. In *Sanders* the issues are of fact as to whether determinations had been made in the prior case. Based on the facts of each case and the rule set forth by this Court in *Hlady, supra,* we find the doctrine of res judicata does not bar the claim of plaintiff Gose but does bar the claim of plaintiff Sanders.

## I. Facts

### A. *Gose*

Plaintiff, Tipton G. Gose, commenced employment with defendant Monroe Auto Equipment in 1945. In 1946, plaintiff cut his left ankle; on August 3, 1953, he reinjured the same area. Both incidents occurred while at work.

The 1953 incident developed into an ulcerated skin condition which caused intermittent absences from work while plaintiff received treatment. Workers' compensation benefits were voluntarily paid during these absences.

By 1960, plaintiff was apparently totally unable to continue employment and on February 19, 1962, plaintiff underwent a below-the-knee amputation of his left leg.

Compensation benefits were paid voluntarily through the expiration of a 500-week period. Ten days subsequent to the expiration of that benefit period, March 14, 1963, plaintiff filed a petition for hearing with the Workers' Compensation Bureau indicating personal injury dates of August 3, 1953, and the summer of 1960 (presumably the last day of work). The disability was described as "ankle, leg amputation thereof, permanent and total disability, and related injuries". The petition was withdrawn August 12, 1963, however, when the defendant-employer agreed to pay compensation on a voluntary basis. This payment continued for 250 more weeks and terminated December 4, 1967.

Plaintiff testified that after his amputation he was depressed and felt like killing himself. As a result, in August, 1963, plaintiff was admitted to the Ypsilanti State Hospital and was an intermittent patient at that facility until 1968. Since his release, plaintiff has been on medication and in the care of his brother.

On March 14, 1968, plaintiff again filed a claim for workers' compensation benefits. This claim was brought against both his employer and the Second Injury Fund. Plaintiff listed the same disability dates (1953 and 1960) and claimed "industrial loss of use of both legs, insanity, total and permanent disability and related injuries".

Hearing commenced on November 3, 1969, during which Raymond F. Lipton, M.D., who testified that he was a specialist in the treatment of injury cases, was deposed with regard to plaintiff's physical and mental status. As to his physical status, Dr. Lipton found plaintiff suffered from arterial circulatory disease of the right leg. He diagnosed plaintiff's mental problem as "chronic psychosis". This diagnosis was partially based on the fact that

the social worker who accompanied plaintiff from Ypsilanti State Hospital to Dr. Lipton's office had told the doctor that plaintiff had been diagnosed as psychotic. No other medical testimony was presented, and the testimony of Dr. Lipton at no time related the claimant's psychosis to his employment, although, as stated above, the claimant's own testimony related his mental problems to his amputation.

On December 1, 1969, the matter came before the hearing referee for a closing of the record. At that time, plaintiff's attorney officially withdrew from consideration plaintiff's claim of insanity:

"Well, if your Honor please, I would like to complete it from my standpoint by withdrawing that part of the claim which relates to the claim of insanity. We did not offer proofs in that regard, and we do not want a decision made in that regard. We would like instead for the case to proceed on the allegation of loss of both legs * * *."

No objection to the withdrawal was lodged by defendant.

On April 29, 1970, the hearing referee found that plaintiff had suffered industrial loss of the use of both legs and ordered the defendant-employer to pay benefits for 750 weeks; the referee further ordered the Second Injury Fund to pay benefits beyond the 750-week period. The Second Injury Fund appealed this decision to the Workers' Compensation Appeal Board (hereinafter WCAB).

The WCAB modified the referee's order by denying plaintiff the benefits ordered due from the Second Injury Fund. Apparently no appeal was taken from this modification.

In April, 1972, plaintiff again applied for benefits from his former employer and the Second

Injury Fund. Plaintiff recited the same injury dates and the same disabilities as previously claimed in the 1968 petition, including insanity. No change in condition was alleged, but testimony pursuant to this claim included that of a psychiatrist. Defendants, employer and Second Injury Fund, filed a motion to dismiss, claiming that plaintiff's present claim was barred by res judicata. A hearing was held on January 26, 1973, which resulted in a finding that plaintiff was "incurably insane as determined by court decisions and is permanently and totally disabled". Further compensation, however, was found to be barred by application of res judicata. The WCAB affirmed, finding that plaintiff's contention of insanity was a triable issue at the earlier 1969 hearing, and was therefore barred by res judicata.

Plaintiff filed an application for leave to appeal with the Court of Appeals. That Court, in a peremptory order issued November 21, 1977, ruled:

"It is ordered, pursuant to GCR 1963, 806.7, that this cause be, and the same is hereby remanded to the Workmen's Compensation Appeal Board for consideration, on the merits of the evidence and without invoking res judicata, of the question whether plaintiff is totally and permanently disabled as a result of incurable insanity under the act. *Morgan v Freedman Artcraft,* 401 Mich 54 (1977).

"This Court retains no further jurisdiction."

Both defendants sought leave to appeal to this Court. Leave was granted June 1, 1978.

B. *Sanders*

Plaintiff, Louise Sanders, commenced employment with defendant General Motors Corporation in October, 1952. From that date until November, 1960, plaintiff worked in various capacities includ-

ing packing bumpers, working on a press, working on the production line and inspecting.

At the end of plaintiff's shift on November 10, 1960, while working as an inspector, plaintiff tripped and fell over several pieces of wire which had been discarded in an aisle. The fall resulted in injuries to plaintiff's back.

Plaintiff first consulted with her own physician, Dr. John Benson, who recommended that she cease work for a 30-day period. The plant physician, Dr. Clark, however, did not agree that the injuries to plaintiff's back necessitated total cessation of work. Rather, Dr. Clark had plaintiff transferred to sedentary work for a 30-day period. Plaintiff returned to her prior duties at the conclusion of the 30-day period and subsequently transferred to several other positions. For approximately a three-year period between plaintiff's November, 1960 fall and April, 1963, plaintiff continued to work while she received treatment for back and leg problems occasioned by her fall. In April, 1963, however, plaintiff's medical problems necessitated cessation of work.[1]

From termination of employment through 1966, plaintiff underwent several surgeries and periods of hospitalization and was able to perform only limited activities. Plaintiff testified that in 1966, following her third laminectomy, she was unable to do almost all household chores, be mobile for more than a short time, prepare meals or drive or ride in an automobile.

Plaintiff received workers' compensation benefits during much of the period between April, 1963 and October, 1965.

---

[1] In 1965 plaintiff returned to work for a four-day period but was unable to continue. This incident of employment was apparently found to be insignificant because there was a subsequent determination that plaintiff's last day of work occurred in 1963.

On September 27, 1967, plaintiff filed a petition for hearing with the Workers' Compensation Bureau alleging total and permanent disability to her back, legs and nervous system. A hearing was held December 5, 1968, which resulted in a finding that, as of April 15, 1963, plaintiff had sustained an occupational disease disability and was therefore entitled to receive compensation for total disability from her employer for the maximum statutory period of 500 weeks[2] (*i.e.,* until November 11, 1972). The hearing referee simultaneously determined, however, that defendant Second Injury Fund, unlike defendant employer, was not liable because plaintiff had "failed to sustain the burden of proof to establish *total and permanent* disability as defined by the statute" (emphasis added). No appeal was taken from this determination.

On December 6, 1972, plaintiff again filed a petition for hearing with the Workers' Compensation Bureau alleging total and permanent disability due to loss of industrial use of both legs. Pursuant to this second hearing, the Administrative Law Judge concluded that plaintiff was "totally and permanently disabled through the industrial loss of use of both legs".

Appeal was taken to the WCAB. The WCAB determined that, because there had been no

---

[2] The 500-week limit was subsequently legislatively changed. As discussed by the Court of Appeals in the instant case:

"The statute in effect at the time of the plaintiff's injury limited benefits for total disability to 500 weeks. 1948 CL 412.9(a) [since repealed and replaced by MCL 418.351(1); MSA 17.237(351)(1)]. This limit did not apply to persons found to have a 'total and permanent disability'. The 500-week limitation was removed by 1965 PA 44, but it nevertheless applied to the plaintiff's case because—absent a clear legislative expression of contrary intent—compensation rights are determined under the law in effect on the date of injury. *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160; 150 NW2d 752 (1967). But *cf. Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959)." 80 Mich App 190, 192; 263 NW2d 329 (1977).

change in plaintiff's condition since the first hearing, the doctrine of res judicata as set forth by this Court in *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975), precluded a redetermination of the issue of plaintiff's total and permanent disability.

Plaintiff appealed to the Court of Appeals which found that, despite the doctrine of res judicata, there were two possible approaches under which total and permanent disability could now be found.

The first possible approach was explained as follows:

"[I]t is possible that the referee who entered the first award in 1968 found that the plaintiff was then suffering a total loss of industrial use of her legs but that it was impossible at that time to determine whether or not the loss was permanent." *Sanders v General Motors Corp,* 80 Mich App 190, 194; 263 NW2d 329 (1977).

The second possible approach centered on a change in the legal standard:

"Whether or not the referee believed that the plaintiff's condition was permanent, he may have found no 'total and permanent disability' because he found no 'loss of industrial use of both legs'. While the statutory phrase has remained the same, the case law interpretation of that phrase has undergone a considerable evolution beginning shortly after the plaintiff's 1960 injury date. *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963), *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970), *Burke v Ontonagon County Road Comm,* 391 Mich 103; 214 NW2d 797 (1974)." *Sanders, supra,* 195.

Based on these alternative possibilities, the Court of Appeals vacated the decision of the

WCAB and remanded to that board for further proceedings.

Appeal was taken from this decision. On June 1, 1978, this Court granted the applications for leave to appeal of the employer and the Second Injury Fund and the cross-application for leave to appeal of plaintiff.

## II. ISSUE

Because of the differing factual aspects of *Gose* and *Sanders,* this Court phrased in different language the issues on which leave to appeal was granted.

The issue on which this Court granted leave to appeal in *Gose* is as follows: "[D]oes the doctrine of res judicata bar plaintiff's second total and permanent disability claim based on insanity" when, in the prior case, the claim based on insanity was withdrawn before adjudication? 402 Mich 950p.

In *Sanders* the issue is: "[D]oes the doctrine of res judicata apply to bar plaintiff's total and permanent disability claim when the issue of total and permanent disability was litigated and decided against the plaintiff at a previous hearing before a referee?"[3] 402 Mich 950i.

The order in each case indicated the two cases were to be argued and submitted together.

## III. WORKERS' COMPENSATION RES JUDICATA

### A. *Hlady*

Our point of departure in deciding these two

---

[3] As to plaintiff-cross-appellant in *Sanders,* the grant was limited to the question:

"Has the Court of Appeals correctly, in this case, enunciated the doctrine of res judicata as it is to be applied in workers' compensation cases?"

cases is the longstanding rule in this jurisdiction that, absent a change in the claimant's physical condition, the doctrine of res judicata applies to workers' compensation law. *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975); *Besonen v Campbell,* 243 Mich 209; 220 NW 301 (1928); 24 Michigan Law & Practice, Workmen's Compensation, § 234. There is a distinction, however, between the scope of the doctrine's application to workers' compensation and the scope of its application to other areas of the law. As noted by the Court of Appeals in *Stokes v Lakey Foundry Corp,* 20 Mich App 217, 219; 173 NW2d 832 (1969):

"*Except for workmen's compensation cases,* Michigan has held that the doctrine of *res judicata* applies not only to issues which were determined on the merits, but also to matters which the parties had the opportunity to present for adjudication on the merits. *Strech v Blissfield Community Schools District,* 357 Mich 620 [99 NW2d 545 (1959)]; *Gursten v Kenney,* 375 Mich 330 [134 NW2d 764 (1965)]."[4] (Emphasis added.)

That case then went on to correctly set forth the scope of res judicata's application to the law of workers' compensation as of its 1969 decisional date, as follows:

"While the doctrine of *res judicata* does apply to workmen's compensation cases *(Willis v Michigan Stan-*

---

[4] As demonstrated in the quoted portion, *Stokes* notes the distinction between res judicata *vis-à-vis* workers' compensation law and res judicata *vis-à-vis* other areas of law. However, solely in regard to the general civil law, there has existed some further conflict as to the proper scope of application of res judicata. See *Rogers v Colonial Federal Savings & Loan Ass'n of Grosse Pointe Woods,* 405 Mich 607, 615-617; 275 NW2d 499 (1979).

In *Rogers,* GCR 1963, 203.1 was discussed as a limitation on res judicata in Michigan. The GCR now limits merger and bar under res judicata, but as a general court rule it has no specific applicability to workers' compensation proceedings.

*dard Alloy Casting,* 367 Mich 140 [116 NW2d 222 (1962)]), in Michigan it has been limited to issues that were actually litigated as a matter of fact. *Hebert v Ford Motor Co,* 285 Mich 607 [281 NW 374 (1938)]; *White v Michigan Consolidated Gas Co,* 352 Mich 201 [89 NW2d 439 (1958)]." *Stokes, supra,* 219.

Subsequent to *Stokes,* in *Hlady v Wolverine Bolt Co,* 393 Mich 368, 376; 224 NW2d 856 (1975), a case which was twice before this Court for resolution of differing issues, this Court slightly broadened the scope of application of res judicata in workers' compensation cases.

In *Hlady* the plaintiff lost four fingers in 1945 when her hand got caught in a punch press. In 1947, upon expiration of benefits under the statutory 100-week specific loss schedule, plaintiff filed an application for further benefits alleging industrial loss of use of her right hand and/or general disability. The employer appealed a WCAB award of compensation alleging there was no entitlement to benefits under the test existing at the time. We agreed with the appellant and reversed the award of compensation stating:

"The record is devoid of testimony tending to prove that plaintiff has suffered *any different or greater loss than normally results from the amputation of 4 fingers of a hand.* Notwithstanding plaintiff claimed that the amputation of her fingers resulted in disabling 'sequelae' and 'general disability,' the commission found none *except disability which normally follows such amputations."* (Emphasis added.) *Hlady v Wolverine Bolt Co,* 325 Mich 23, 25; 37 NW2d 576 (1949).

Approximately eight years later, this Court in another case reconsidered the test under which Ms. Hlady had been denied benefits. In an evenly divided vote, four Justices would have adopted a

more liberal test under which Ms. Hlady could have recovered, *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957).

In light of *Van Dorpel,* in 1967 plaintiff Hlady repetitioned for benefits. Plaintiff therein subsequently appealed to this Court from a Court of Appeals decision affirming the WCAB's denial of benefits based on res judicata. On appeal, this Court adopted the more liberal test set forth in *Van Dorpel,* but affirmed the application of res judicata to deny plaintiff benefits. The rule utilized to resolve the res judicata dispute in *Hlady,* however, added another dimension to the doctrine not articulated in the more recent case law,[5] *e.g., White v Michigan Consolidated Gas Co,* 352 Mich 201, 211; 89 NW2d 439 (1958), and *Hebert v Ford Motor Co,* 285 Mich 607, 613; 281 NW 374 (1938). Instead of merely limiting res judicata to questions which were litigated in fact, this Court went further, stating

"that the doctrine of res judicata applies not only to facts previously litigated, but *also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation.*" (Emphasis added.) *Hlady, supra,* 376.[6]

---

[5] The authority cited for the broader statement of the rule was Justice COOLEY's opinion in the early case, *Jacobson v Miller,* 41 Mich 90; 1 NW 1013 (1879).

[6] Defendants in both *Gose* and *Sanders* assert that Michigan adheres to the broad rule of res judicata in workers' compensation cases. The broad rule includes not only all claims adjudicated but also all claims *adjudicable* at the time of the first hearing.

While citation to this broad rule does exist in certain cases, we have not found a workers' compensation case in which res judicata was actually applied to an injury adjudicable but not adjudicated at the time of the first hearing.

*Boyich v J A Utley Co,* 306 Mich 625; 11 NW2d 267 (1943), is cited by defendants but it is inapposite. As correctly noted by this Court in a subsequent case discussing *Boyich,* the later asserted neurosis disability had actually been adjudicated as not work-related at a prior hearing, *Laichalk v Chicago Pneumatic Tool Co,* 308 Mich 298, 303; 13 NW2d 826 (1944), and, therefore, was barred by res judicata.

This expanded rule, enunciated in *Hlady,* constitutes this Court's most recent application of the doctrine to workers' compensation law in Michigan, and is the rule which necessarily controls the cases at bar.[7]

This limited scope is consistent with the nature of workers' compensation. Although the general policy rationale for the doctrine of res judicata is

Similarly, although the broad rule is mentioned in *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976), res judicata was found totally inapplicable.

In *White v Michigan Consolidated Gas Co,* 352 Mich 201, 211; 89 NW2d 439 (1958), citation is made to 58 Am Jur, Workmen's Compensation, § 508, now found at 82 Am Jur 2d, Workmen's Compensation, § 584, which iterates the broad rule, but the rule actually set forth in the opinion and utilized by this Court was as follows:

"[F]or the doctrine of *res judicata* to bar a subsequent proceeding, the precise issue of fact or law must have been at issue and decided in the preceding adjudication." *White, supra,* 211.

In *Hlady,* both *White, supra,* and prior § 508 of American Jurisprudence were cited for the broad rule. *Hlady, supra,* 375-376. However, subsequently the narrower rule was articulated:

"[T]he doctrine of res judicata applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation." *Hlady, supra,* 376.

It was this narrower rule that was then applied by this Court in resolving the issue in *Hlady, supra,* 380.

Finally, in *Kubiak v Briggs Manufacturing Co,* 286 Mich 329; 282 NW 427 (1938), the broad rule and the narrow rule are both quoted, *Kubiak, supra,* 333-334. However, it was again the narrow rule which was applied to preclude the bar of res judicata and thereby affirm an award of compensation for an injury which existed prior to the first compensation award but was not therein adjudicated.

What has occurred is citing a broad and a narrow rule, each alongside the other, but actually applying only the narrow rule.

[7] In *Hlady,* the decision of the Court, authored by Justice THOMAS MATTHEW KAVANAGH, was signed by four Justices. A concurring opinion authored by Justice LEVIN and signed by then Chief Justice THOMAS GILES KAVANAGH agreed that Ms. Hlady was not entitled to benefits but would not have based the denial on res judicata, pp 386-387. As to res judicata, Justice LEVIN expressed the rule common to the law in general as opposed to workers' compensation, "that all issues which were *or could have been raised* in an action are barred under the doctrine" (emphasis added), pp 385-386. However, he stated his view that "a change in the law, like a change of fact, eliminates the bar of res judicata where the claimant seeks continuing benefits under a statute providing 'income maintenance' ", p 387.

to ensure finality in litigation, 46 Am Jur 2d, Judgments, § 395, p 559, workers' compensation is remedial legislation which is to be liberally construed. Given the remedial nature of the legislation, the policy favoring finality is not always consistent with the purpose behind workers' compensation, which is to maintain the fiscal integrity of persons whose wage-earning capacity has been suspended or terminated. See *Hlady, supra,* 390-391 (opinion of Levin, J.); see, generally, *Lahti v Fosterling,* 357 Mich 578, 589; 99 NW2d 490 (1959). It is for this reason that res judicata is narrowly applied in workers' compensation cases. It is for this same reason we today reaffirm the *Hlady* limited application of res judicata *vis-à-vis* workers' compensation.

## B. *Morgan*

Prior to analyzing the cases at bar under the *Hlady* rule, however, it is beneficial to discuss *Morgan v Freedman Artcraft,* 401 Mich 54; 257 NW2d 85 (1977), the case cited by the Court of Appeals panel in reversing the WCAB's denial of benefits in *Gose.*

In *Morgan,* the claimant was injured in a June 16, 1970 accident involving a forklift truck. He filed a claim for benefits, but at the hearing held May 26, 1971, the claimant expressed the intention to return to favored work offered by the employer to commence on June 7, 1971. Under this circumstance, it was unnecessary for any fact finding to be made as to whether the claimant was totally or permanently disabled or whether the favored work was within the claimant's capacity to perform. The first hearing was resolved with an award of benefits to terminate as of the June 7, 1971 date when the claimant was scheduled to begin favored work. Subsequently, however, fa-

vored work was not commenced for reasons in dispute. Plaintiff Morgan, on September 28, 1972, brought a second claim pursuant to which further benefits were ordered. The second claim was brought for disability benefits from the period beginning June 7, 1971, the termination date of the prior benefits, until September 19, 1972, at which time the claimant commenced other employment at wages greater than his pre-injury wages. The award of benefits was reversed by the WCAB based on res judicata. Appeal was taken to this Court and, in lieu of granting leave to appeal, a per curiam opinion was issued which reversed the WCAB. Our reversal *was* based on this Court's unanimous view that res judicata did not bar plaintiff's second claim. We stated the following:

"We disagree with the WCAB's application of res judicata in this case. We perceive the issue at the second hearing before the referee to have been twofold: whether claimant was disabled, and the significance and effect of plaintiff's declining of an apparent offer of favored work. The evidence available to the referee prior to his first decision was incomplete on these issues. Evidence at the second hearing, considered on its merits, led the referee to conclude that claimant should receive a second award." *Morgan, supra,* 55-56.

The facts of *Morgan* demonstrate that the scope of the first hearing was of a limited nature due to an assumption, later proved erroneous, that favored work would be commenced by the claimant as of a specified date. The issue of claimant's post-June 7, 1971 disability and refusing to perform favored work had clearly never been considered at the original hearing and was not to be accorded res judicata significance under the dictates of *Hlady.*

Given the rule espoused in *Hlady,* and the basis

for the nonapplicability of res judicata in *Morgan,*
we now turn to an analysis of the cases at bar.

## IV. *GOSE*

As discussed in Part I A, *supra,* plaintiff Gose
filed a claim for benefits in 1968 against defendant
employer and defendant Second Injury Fund based
on the claim that plaintiff had suffered "industrial
loss of use of both legs, insanity, total and perma-
nent disability, and related injuries". As earlier
indicated, some testimony was presented in the
deposition of plaintiff's witness, Dr. Lipton, as to
the existence of plaintiff's psychosis. At the De-
cember 1, 1969 hearing for closing of the record,
however, plaintiff's attorney withdrew the insanity
claim prior to any determination thereof by the
hearing referee. Given this background, we must
decide whether these circumstances are sufficient,
under the doctrine of res judicata, to bar reasser-
tion of the insanity claim. We find, within the
context of a worker's compensation claim, they are
not.

In *Laichalk v Chicago Pneumatic Tool Co,* 308
Mich 298; 13 NW2d 826 (1944), this Court dis-
cussed the impact of a worker's compensation
claim that had been filed and withdrawn prior to
determination. This Court stated: "[b]ecause plain-
tiff's petition * * * was withdrawn, nothing was
adjudicated in that proceeding, and it has no effect
on plaintiff's present petition", *Laichalk, supra,*
301. It is irrelevant that in *Gose* only the insanity
portion of the claim was withdrawn unlike *Lai-
chalk* in which the whole claim was withdrawn.
The two claims in *Gose,* one for insanity and one
for disability due to industrial loss of use of both
legs, were totally separate and no point of law
involving the insanity claim was "necessarily adju-

dicated" in determining the leg disability claim. Therefore, under the rule announced in *Hlady,* plaintiff's insanity claim is not barred by res judicata. It is not the raising of a matter, but the adjudication or decision of the matter which requires application of the bar. See *Tucker v Rohrback,* 13 Mich 73, 75 (1864); *Morgan, supra.* As was stated in *Machen v Budd Wheel Co,* 265 Mich 530, 535-536; 251 NW 580 (1933):

"The doctrine of *'res judicata'* rests upon the principle that a question *once determined by a court of competent jurisdiction by a judgment on the merits* is forever settled so far as litigants * * * are concerned." (Emphasis added.)

We do not question the finding of the Administrative Law Judge that plaintiff's insanity claim was a "triable issue" at the prior hearing. However, the fact that a claim could have been adjudicated at an earlier hearing is not a basis for invocation of res judicata within the context of workers' compensation, see *Stokes, supra,* 219.

## V. *SANDERS*

As discussed in Part I B, *supra,* on September 27, 1967, plaintiff filed a workers' compensation claim against her employer and the Second Injury Fund alleging total and permanent disability to her back, legs and nervous system. Benefits were awarded for the 500-week maximum statutory period from the employer but the Second Injury Fund was not held liable based on the finding that plaintiff had "failed to sustain the burden of proof to establish total and permanent disability as defined by the statute". Plaintiff did not appeal this finding.

Plaintiff filed a second petition on December 6, 1972. This petition alleged total and permanent disability due to loss of industrial use of both legs. On appeal from an award of compensation, the WCAB determined that there was no change in the claimant's physical condition, and that plaintiff was therefore barred from recovery by res judicata as set forth in *Hlady.*

This finding was reversed by the Court of Appeals, *Sanders v General Motors Corp,* 80 Mich App 190; 263 NW2d 329 (1977). The panel found two possibilities for excepting this case from the bar of res judicata. The first theory postulated by the Court of Appeals was that the first hearing took place at a time when the referee could not yet determine the permanency of the claimant's disability, *Sanders, supra,* 194. The second concerned the fact that, since the legal standard affecting the claimant's rights had evolved by judicial pronouncements between the first and second hearing, claimant might now be entitled to benefits if the finding in the first hearing could be read as merely postponing or deferring final determination. *Sanders, supra,* 195-196.

We do not agree that the first "possibility" can be reasonably gleaned from the original determination. Complete evidence as to plaintiff's leg disability was presented and the hearing referee made specific findings thereon.[8] Absent a change in

---

[8] As to plaintiff's total and permanent disability claim for injuries to her back, legs and nervous system, the referee at the first hearing stated as follows:

"It is further ordered that defendant State of Michigan Second Injury Fund has no liability hereunder, *plaintiff having failed to sustain the burden of proof to establish total permanent disability* as defined by the statute." (Emphasis added.)

As a finding of fact supported by the record, it cannot be disturbed by this Court. *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 250; 262 NW2d 629 (1978).

claimant's physical condition, these findings are
res judicata.

Similarly, we do not find the second "possibility"
can be reasonably gleaned from the original deter-
mination. There is nothing in the record of the
first hearing to indicate an intention to postpone
or defer final determination. And, as the majority
of this Court stated in *Hlady* in regard to a subse-
quent change in the law:

"Plaintiff may not concede an issue, necessarily deter-
minative of and included in the judgment * * * and
then, after another has successfully raised the issue she
did not wish to contest, ask * * * for relief. The doc-
trine of res judicata bars this from happening." *Hlady,
supra,* 380.

Although plaintiff asserts to this Court that her
physical condition had, in fact, changed between
the time of the first and second hearings, the
WCAB specifically found as a matter of fact that
no such change occurred. Because there exists a
basis in the record for this finding of fact of the
WCAB,[9] it is conclusive and not reviewable by this
Court, *Dressler v Grand Rapids Die Casting Corp,*
402 Mich 243, 250; 262 NW2d 629 (1978).

Plaintiff finally asserts that the first hearing
solely determined her disability as of the Novem-
ber, 1960 injury date, and, therefore, there is no
bar to a second hearing to establish an occupa-
tional disease disability date as of the last day of
work, April, 1963. The record belies this conten-
tion. The decision of the referee at the first hear-
ing designates April 15, 1963, the last day of work,
as the date of disability.

---

[9] This finding was based upon the testimony of plaintiff's medical
expert, Thomas C. Baker, M.D., who had begun treating plaintiff in
1966 prior to the first hearing and had last examined her in 1974.

In light of the fact that there was a prior determination of all issues now asserted, plaintiff's present claim is barred by application of res judicata.

## VI. Conclusion

The rule of res judicata within the context of workers' compensation in Michigan is as follows:

"[T]he doctrine of res judicata applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation." *Hlady, supra,* 376.

In light of this rule, we affirm the Court of Appeals reversal in *Gose* as we conclude that plaintiff's insanity claim was withdrawn and was not previously adjudicated and points of law pertaining thereto were not necessarily adjudicated in determining and deciding the subject matter (leg disability) of the prior hearing. *Laichalk, supra.*

As to *Sanders,* we reverse the Court of Appeals because we find that plaintiff Sanders' claim involves facts previously litigated and necessarily determined in the first hearing. Because plaintiff has not established a change in physical condition, she is now barred by the doctrine of res judicata as interpreted in *Hlady.*

Affirmed and remanded to the WCAB in *Gose* for consideration without regard to the doctrine of res judicata; reversed and remanded in *Sanders* for entry of an order denying benefits based on res judicata.

Blair Moody, Jr., J., concurred with Williams, J.

LEVIN, J. *(dissenting).* The doctrine of res judicata bars relitigation of a claim or issue previously adjudicated.

In a prior separate proceeding, in *Gose,* it was determined that he was not entitled to compensation for loss of the industrial use of his legs. The question now presented is whether this petition seeking compensation for incurable insanity is barred by the earlier determination because both efforts to obtain compensation seek to enforce the same claim of total and permanent disability.

In *Sanders* it was previously determined that she had not established permanent and total loss of the industrial use of her legs. The question is whether her present petition is within exceptions to the general principle precluding relitigation of a claim or issue previously adjudicated.

Although a reading of my colleagues' opinions might leave one with the impression that the question that divides us is whether general principles of res judicata apply to workers' compensation cases, my disagreement with their opinions is grounded in a belief that they have not applied those principles in deciding these cases.

The Court states that the doctrine of res judicata applies in workers' compensation cases as it does in all other civil litigation and then concludes, without analysis of the doctrine of res judicata, its policies, the facts and circumstances of these cases, the history of the doctrine's application in general civil litigation or the practice and procedure in workers' compensation cases, that Gose's and Sanders' petitions are precluded.

The Court states as to *Gose* that "[t]here can be but one claim for total and permanent disability" and that he "was obligated to advance in a single proceeding every alternative basis which could

support this claim". Justice WILLIAMS would hold
that the doctrine of res judicata applies in work-
ers' compensation cases only to "issues that were
actually litigated as a matter of fact", and since
the question whether Gose was incurably insane
was not litigated when it was decided that he was
not entitled to compensation for loss of the indus-
trial use of his legs, a determination on the merits
of his petition for benefits on the ground of incura-
ble insanity is not precluded.

I agree with the Court's statement that in work-
ers' compensation cases as well as general litiga-
tion the doctrine of res judicata bars all issues
adjudicated or adjudicable in respect to a single
claim. But that does not decide *Gose.* Whether one
endorses a "narrow" or a "broad" application of
res judicata, the question presented is what consti-
tutes the "claim".

In *Gose* the Court states—in conclusory terms—
that the seven alternative bases of compensation
for total and permanent disability (two of which
are incurable insanity and loss of industrial use of
legs) are but one claim. I would hold that each
alternative basis is a separate claim and therefore
litigation of one does not preclude subsequent
litigation of another.

In *Sanders* the Court states that it agrees with
Justice WILLIAMS that Sanders' second petition is
barred because she is asserting the same claim
previously adjudicated against her. It fails to re-
spond to her contention that her petition is within
exceptions to the preclusion which ordinarily re-
sults from previous adjudication. I would hold that
Sanders' case falls within recognized exceptions to
the general rule.

## I

In 1946 Gose suffered a cut below the left ankle

and developed an ulceration. The cut never healed completely. In 1953, he fell and reinjured the same area. Thereafter, he was hospitalized several times and underwent skin graft operations. When able, he returned to work for short periods and was given sitting work. In 1960, Gose had to cease work completely. By 1961, he had developed circulatory complications in his right leg and was unable to stand or walk for more than ten minutes without suffering severe pain. In 1962, because of the persistence of the ulceration, his left leg was amputated below the knee. He was fitted with a prosthesis and at times experienced a breaking open of the stump.

Gose became depressed after the amputation and was admitted to Ypsilanti State Hospital. Thereafter he was released and readmitted several times, once for a three-year period ending in May, 1971. He was then placed in a room and board arrangement.

From 1953 Gose received 500 weeks' general disability benefits. He then petitioned for further compensation and an additional 250 weeks were voluntarily paid. In 1968 he petitioned for total and permanent disability benefits describing the disability as "industrial loss of use of both legs, insanity, total and permanent disability and related injuries".[1]

---

[1] Gose's deposition was taken. He testified to the 1946 and 1953 injuries to his left leg and the treatment and amputation. He also testified to problems with his right leg beginning in 1961. He could not stand or walk on the right leg without experiencing pain. He was unable to use his right leg for more than ten minutes and had to rest for significant periods between uses.

The deposition of Dr. Lipton was also taken. He testified that Gose's left leg was amputated below the knee due to a skin ulceration caused by the injuries suffered in 1946 and 1953. In addition, he diagnosed obliterative arterial circulatory disease of the right limb. This was evidenced by a swollen and tender calf, the absence of a pulse in the right foot, and severe pain in that area.

A hearing was held December 1, 1969. Gose's lawyer began with the statement that he was "withdrawing that part of the claim which relates to the claim of insanity. We did not offer proofs in that regard, and we do not want a decision made in that regard. We would like instead for the case to proceed on the allegation of loss of both legs."

The lawyer for the employer did not object to this withdrawal and request for reservation of decision on the issue of insanity.

The referee awarded benefits for total and permanent disability but the Workers' Compensation Appeal Board reversed because the impairment to Gose's right leg did not result from the injury which caused loss of the left leg and "therefore such impairment is not the result of the employment relationship".

Gose then petitioned for total and permanent disability benefits based on insanity.[2] The referee

Dr. Lipton testified to a third diagnosis—chronic psychosis. This was not further developed on direct. On cross-examination it was revealed that his diagnosis was based on the diagnosis of the doctors at Ypsilanti State Hospital, the slowing of Gose's mental processes observed by him in an interview and Gose's impaired memory. He was questioned regarding the possibility that Gose suffered from some form of epilepsy.

At the hearing, the depositions of Gose and Dr. Lipton were offered in evidence. The employer offered a letter from a doctor at Ypsilanti State Hospital who confirmed Dr. Lipton's diagnosis of Gose's right leg problem but expressed his opinion that it was not related to the industrial injury to his left leg.

[2] At the hearing, Gose offered the deposition of a psychiatrist who testified in part:

"Diagnostically I felt that he was suffering from a depressive reaction associated with anxiety. His condition arises or is caused by his industrial accident. He has a history of schizophrenic reaction, paranoid type which, apparently, at the time I saw him was in remission. Although his brother's death worsened his depression, I feel that its primary cause was the accident and amputation loss of his leg. I felt that his prognosis was poor due to aging, and that he may require psychiatric hospitalization again in the future.".

Defendants also offered the deposition of a psychiatrist. In his opinion, Gose suffered from organic brain syndrome which was due to

found that Gose was "incurably insane" and "is permanently and totally disabled", but that his claim was precluded by the doctrine of res judicata.[3]

The WCAB affirmed.[4]

The Court of Appeals reversed by order, citing *Morgan v Freedman Artcraft*.[5]

## A

Gose's petition based on incurable insanity is not barred by res judicata unless that petition and his previous petition based on loss of industrial use of both legs seek to enforce a single claim.

a circulatory deficiency. He did not feel that Gose's mental illness was related to his injury at work.

Gose testified to the events of his injury and leg amputation and to the severe depression he felt afterwards. He could not get a job, felt useless and felt like killing himself. He was cross-examined about possible seizures he might have had in 1964 and 1966.

[3] "Plaintiff is incurably insane as determined by court decisions and is permanently and totally disabled. *(Sprute v Herlihy Mid-Continent Co* [32 Mich App 574; 189 NW2d 89 (1971)].) The concept of a triable issue has been raised as part of the defense of res judicata. This has been rejected by the court on many occasions, but I find that it has application to the instant case. The prior order of the Appeal Board shall therefore control."

[4] "In the brief on appeal, the plaintiff construes the quote in the prior board opinion as an exclusion, by the board, of the issue of insanity and reservation thereof for future trial. We reject that construction.

"It is not unusual for the parties, at trial before the referee, to drop various injury dates, add new ones and sometimes either augment or delete claims made in the petition. Often a board decision will simply note these alterations in the pleadings.

"Plaintiff's petition sought the designation of total and permanent disability on the basis of alleged qualification under certain definitive provisions of the statute. The claim for total and permanent designation was pursued to a conclusion even though one of the issues, insanity, was abandoned by plaintiff.

"The referee correctly concluded that the concept of triable issue has application to the instant case."

[5] *Morgan v Freedman Artcraft*, 401 Mich 54; 257 NW2d 85 (1977). This Court held that where "[t]he evidence available to the referee prior to his first decision was incomplete on" the issues, the first decision was not res judicata.

Before 1954 a worker could recover total and permanent disability benefits if he suffered certain specifically enumerated losses or if he was totally and permanently disabled in fact.[6] Neither insanity nor loss of industrial use of legs was specifically enumerated.[7] Since amendment of the workers' compensation act in 1954, "the issue of total and permanent disability is not one of fact but whether plaintiff's injuries come within one of the enumerated losses set forth"[8] in the act.

The single claim, based on total and permanent disability in fact, was abolished when the Legislature substituted seven specifically enumerated alternatives as the exclusive bases for recovery. While the seven alternative bases continue to be

_____

[6] See *Springer v Reed Foundry & Machine Co,* 346 Mich 11; 77 NW2d 252 (1956); *Edwards v Michigan Light Alloys Corp,* 346 Mich 169; 77 NW2d 567 (1956). See fn 7, *infra,* for the statutory language as it read before the 1954 amendment.

[7] The 1954 amendatory language replaced the following provision:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any 2 thereof, shall constitute total and permanent disability, to be compensated according to the provisions of section 9." 1949 PA 238.

The following is the text of the relevant portion of the act as amended in 1954 and further amended in 1956, adding clause 7:

"Sec. 10. * * * Total and permanent disability, compensation for which is provided in section 9 hereof, means:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury." MCL 412.10; MSA 17.160, as amended by 1956 PA 195.

[8] *Hier v Boichot Concrete Products Corp,* 379 Mich 605, 612; 153 NW2d 753 (1967). See *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959); *Liesinger v Owen-Ames-Kimball Co,* 377 Mich 158, 164, fn 5; 139 NW2d 706 (1966).

referred to collectively as "total and permanent disability", those words are now only a shorthand expression of a category of entitlements. They have no operative effect and their deletion would not change the meaning of the act. With or without those words, the act provides that in the seven described situations the Second Injury Fund shall pay differential benefits and there is an 800-week conclusive presumption of disability. To continue to give meaning to the words "total and permanent disability" is contrary to the amendment's purpose of discontinuing compensation for total and permanent disability in fact and providing compensation where any of the seven distinct statutory bases is established.

Since the operative effect of the words "total and permanent disability" has been eliminated, all that links the seven alternative bases for the 800-week conclusive presumption and differential benefits are that they are enumerated in the same subsection of the act.

Although I disagree with Justice WILLIAMS' statement that in workers' compensation cases the doctrine of res judicata is limited to issues actually litigated as a matter of fact, the tendency of his statement may be more accurate than the majority's statement. In disassociating itself from his statement, the majority states that all matters "arising out of the same transaction" must be presented at one time to avoid "piecemeal compensation for an injury."

If what is meant by "issues actually litigated" is "claim actually litigated", rather than the facts presented in support of or opposition to the claim, then Justice WILLIAMS' formulation would be more accurate than the Court's statement that renewed litigation and "piecemeal compensation" are incon-

sistent with the proper administration of the workers' compensation law. The Court does not explain why the "transaction" necessarily defines the scope of the claim, nor does it define the term "transaction" or what it means by "same transaction".[9] Further, the Court's statement that requiring the worker to "present all of his available claims in a single proceeding is consistent with this purpose of adjudicating the worker's needs" fails to consider the history of and present practice in the administration of the workers' compensation law and overstates the scope of the preclusion resulting from prior litigation.

Although the Court stresses that Gose's second application, as did his first, seeks compensation for disability arising from injury to his left ankle, that is of little or no importance. Unlike a personal injury claimant, a workers' compensation claimant is not obliged to present all claims arising out of a single injury in one proceeding. He may, for example, seek first to recover 162 weeks' specific loss benefits for loss of a foot and, in a subsequent proceeding after payment of those benefits, seek general disability benefits arising out of the same injury; the applications seeking benefits for loss of the foot and for general disability assert separate claims for res judicata purposes although they arise out of the same transaction, there was no change in physical condition and the facts supporting both claims were known when the first pro-

---

[9] See Restatement Judgments, 2d (Tentative Draft No. 5, 1978), pp 142-143:

"The expression 'transaction, or series of connected transactions,' is not capable of a mathematically precise definition; it invokes a pragmatic standard to be applied with attention to the facts of the cases. And underlying the standard is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim."

See fn 15, *infra,* and accompanying text.

ceeding was instituted.[10] Similarly, a totally dis-
abled worker suffering one of the seven enumer-
ated losses may choose to seek general disability
benefits first and to defer his specific loss claim.
Often the hearing on a general disability claim
takes place years before the worker applies for a
hearing on a claim for loss of industrial use of legs
arising out of the same injury. The hearing on loss
of industrial use of legs is frequently deferred
until the conclusion of the 500-week period. At the
deferred hearing, there is no inquiry whether
there has been a change of condition since the
general disability hearing. Renewed litigation and
piecemeal compensation are thus characteristics of
workers' compensation proceedings.

## B

The Court states:

"There can be but one claim for total and permanent
disability. Although the statute recognizes seven alter-
native bases for it, evidence establishing more than one
basis would occasion only one award."

One can agree that there can be only one *award*
for total and permanent disability without con-
cluding that there can be but one *claim* for such
compensation arising from a single accident. Gen-
erally, there is but one right to compensation for a
loss. A judgment successful in securing compensa-
tion will merge with the loss. This is so not be-
cause a plaintiff is entitled to only one chance to
secure damages but because he is entitled to be
compensated only once. A claim which would not
have been barred had the plaintiff failed may

[10] See *Kubiak v Briggs Manufacturing Co,* 286 Mich 329; 282 NW
427 (1938).

nevertheless be merged in the judgment should he prevail.[11] The question before us is whether a claim will be barred where the plaintiff has failed in a prior suit, and this requires that we determine if the second suit is based on the same claim.

The Court continues:

"Gose's second petition, although upon a different basis (insanity instead of industrial loss of use of both legs), nonetheless seeks compensation for the same claim of total and permanent disability arising from injury to his left ankle. He was obligated to advance in a single proceeding every alternative basis which could support this claim."

Gose was obligated to advance in a single pro-

---

[11] In *Herendeen v Champion International Corp*, 525 F2d 130 (CA 2, 1975), plaintiff's previous suit seeking pension benefits under an oral agreement was held no bar to a subsequent suit for benefits under a theory that he had acquired vested rights during his years of employment. While acknowledging that the same alleged right to receive benefits was involved in both cases, the court found that res judicata did not apply because the judgment in the second action would not conflict with the first, there was no "measure of identity" between the facts and issues in the two cases, and substantially different evidence was required for proof of the separate theories of liability. Surely, had the plaintiff prevailed in his first suit, he could not again seek the same pension benefits on a different theory.

In *Casey v Musgrave*, 72 Nev 31, 34; 292 P2d 1066 (1956), res judicata was not found to bar a suit by plaintiff for the value of his services on a ranch though he had earlier tried and failed to establish a partnership in the ranch based on the same services. The court stated "it is not enough, however, that the same circumstances and transactions have, in general, given rise to both cases". Certainly his claim for the value of his services would have merged with a favorable judgment of a partnership based on the same services.

*Fairwood Bluffs Conservancy Dist v Imel*, 146 Ind App 352; 255 NE2d 674 (1970), concerned an easement for a sanitary sewer which overflowed onto the Imels' property. After failing in an action alleging fraudulent inducement and seeking rescission of the easement and damages, the Imels commenced a second action claiming that the sewer was a nuisance and asking for abatement and damages. The court found that the common factual predicate of the sewer overflow did not call for application of res judicata because the evidence necessary to sustain the two suits substantially differed. But had plaintiffs succeeded in their first suit for rescission and damages, they could not have maintained another action based on nuisance seeking additional damages.

ceeding every alternative basis which could support "this claim" only if there was truly one claim.

Under the workers' compensation act a "cause of action" or "claim" is the sustaining of a compensable disability by the employee. Compensable disabilities are strictly and narrowly defined by the act and are the basis of any entitlement. An accident resulting in an injury gives rise to no right to compensation unless a compensable disability ensues.

The Court defines the claim as one "of total and permanent disability *arising from injury to his left ankle*". (Emphasis supplied.) There is, however, no such claim. Gose suffered an injury to his left ankle, and may have been totally and permanently disabled in fact as a result, but he would have had no claim to differential/800-week conclusive presumption benefits for "total and permanent disability arising from injury to his left ankle" unless he sustained a disability specifically enumerated in the pertinent section of the act, *e.g.,* loss of industrial use of both legs or incurable insanity.

Suppose a worker suffers a totally disabling occupational disease which also causes him to lose industrial use of both legs. He can, under the occupational disease section, petition for general total disability benefits; if he prevails he cannot by claiming total and permanent disability collect further compensation from his employer for the total disability (although such a claim may entitle him to differential benefits from the Second Injury Fund). He has suffered one total disability and can recover only one award for that loss. He has, however, suffered the disability under circumstances which give rise to two claims.

Because he makes claims asserting distinct statutory entitlements, his inability to prove one claim is no bar to his assertion of the other although he bases both claims on the same injury. In the one case he seeks to prove a total disability due to causes and conditions which are characteristic of and peculiar to the business of the employer and hence a right to compensation under ch 4 of the act. In the other he seeks to prove a work-related permanent and total loss of industrial use of both legs and thus a right to compensation under ch 3. If it is determined in his first suit that his disability is work-related but is not an occupational disease or disability, relitigation of those *issues* is precluded but that does not preclude the other *claim*—a claim for permanent and total loss of industrial use of both legs.

Gose's claim based on insanity is no less a separate claim because it is derived from the same statutory section as his prior claim. In the one case he seeks to prove work-related loss of use of both legs, in the other work-related insanity.

Gose's accident allegedly caused two compensable disabilities and, therefore, he had two claims. He was under no obligation to litigate them together.[12]

---

[12] "It has been held that an award of compensation for an injury to one member or one portion of the anatomy is not a bar to a subsequent application for an injury to another member or portion of the anatomy, sustained in the same accident, out of which the original award arose.

"'* * * [I]n *Skelly Oil Co v Gage,* 167 Okla 329; 29 P2d 616 (1934), the court said: 'Where a claim is made for compensation for certain specified injuries, and the commission awards for some of these injuries and does not award for others, we will not apply the rule of res judicata to those injuries not mentioned in the award, but will presume that the commission did not intend to adjudicate upon them at the time.'" Anno: *Workmen's Compensation Awards—Res Judicata,* 122 ALR 550, 589.

In *Spencer's Case,* 123 Me 46; 121 A 236 (1923), it was held that where the original agreement for compensation specified the injury as

## C

Although prior and present practice do not require presentation of all claims arising out of the same injury or transaction in one proceeding, the Court might promulgate such a requirement. Whether it should do so is a policy question which the Restatement suggests should be determined "pragmatically".[13] While no single factor is determinative, the Restatement provides and the cases indicate that trial convenience is often the determinative factor with the focus on "how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first".[14]

Manifestly, Gose's proofs tending to show incurable insanity do not overlap his proofs in the earlier proceeding attempting to show loss of industrial use of legs. The injury to the leg and its

---

"amputation first and second fingers left hand", the order approving such agreement was not res judicata in a later petition for benefits for permanent impairment of the left thumb. The injury apparently existed at the time of the first petition. See Anno: *Workmen's Compensation: time and jurisdiction for review, reopening, modification, or reinstatement of award or agreement,* 165 ALR 9, 48.

In *Hill v Conroy Brothers Co,* 306 Minn 358; 237 NW2d 606 (1975), the employee sustained lower back injuries in April and October of 1966. He was awarded benefits for temporary total disability and 30% permanent partial disability. At hearing, the employee's lawyer requested that the question of his total and permanent disability due to the back injury aggravating a pre-existing emotional condition be reserved and no findings were made on that issue.

The employer claimed that the later petition for total and permanent disability was barred by an earlier determination that the disability was not related to the employment. The court held that the issue was reserved and not passed upon by the referee and that address of the subject by two workers' compensation commissioners in the mistaken belief that the claim had been presented and litigated did not make the claim for total and permanent disability res judicata. See, also, *Westendorf v Campbell Soup Co,* 309 Minn 550; 243 NW2d 157 (1976).

[13] Restatement Judgments, 2d (Tentative Draft No. 5, 1978), § 61, comment b, pp 142-143.

[14] *Id.*

work connection are the only areas of overlap; an aspect of the doctrine of res judicata (collateral estoppel) bars relitigation of those issues. The proofs are so distinct and unrelated because Gose's petitions, although both for differential/800-week conclusive presumption benefits, seek to enforce separate claims under the act.

In contrast with a personal injury action, the inquiry in a workers' compensation case is generally whether a disability compensable under the act has been established and not whether or how the injury occurred. It is the disability, rather than the injury or accident, which best defines the scope of a workers' compensation claim.

The workers' compensation act changed the nature of the remedies to which one injured in his employment is entitled. The worker need not prove that the employer was negligent or otherwise at fault. The focus is the disability and not the breach. The central point of litigation in ordinary negligence actions is thus absent from a workers' compensation case. It is replaced by the employment nexus and the compensable disability.

There are three basic elements of proof: i) the worker must establish that he has suffered a disability compensable under the act—that he is, for example, incurably insane; ii) the compensable disability which he suffers must have been caused by the accident or exposure; iii) the accident or exposure which caused the compensable disability must have a sufficient employment nexus to be deemed to have occurred in the course of the employment.

The first and second elements focus exclusively on the specific compensable condition. Only the third looks to the circumstances of the accident or exposure. In most cases, as here, the worker will

be injured on the premises and there will be no question that there is an adequate employment nexus. The contest will center on whether the worker suffers from the disability he alleges and whether that disability is due to the accident or exposure.

One of the goals of res judicata—trial convenience and the efficient use of adjudicative resources—would be defeated by requiring that claims for separate compensable disabilities be joined.

The disability question is ordinarily presented through expert testimony, often difficult and, for both sides, costly to assemble. It is unnecessarily burdensome to require a worker who seeks differential/800-week conclusive presumption benefits on alternative bases—"total and permanent loss of sight", "incurable insanity", "permanent and total loss of industrial use of legs"—to present expert testimony on all three grounds when he anticipates prevailing on one. Requiring the worker to do so also obliges the employer to assemble expert testimony on all grounds.

Adjudication in one proceeding of multiple bases for recovery would be unruly, for all the various claims would have in common is that they all involve injury to the same worker. For each compensable disability alleged, the compensable condition—loss of sight, insanity, loss of industrial use—would have to be proved as would its work-relatedness. The result would be a series of essentially separate cases all being heard together.

If the worker prevails on what he perceived to be his strongest claim, the additional investment of time and money will prove to have been unnecessary. If the worker were not required to bring all ripe claims together, he may have petitioned on

his strongest claim alone, secured benefits and
never put himself or his employer to proofs on the
other claims. Adjudication in one proceeding of
multiple bases for recovery will not promote trial
convenience. It will needlessly extend workers'
compensation proceedings.[15] Because the common
area of contest is so small when compared to the
areas of separate issues and proofs, the common
origin of disabilities in a single injury or accident
should not be the measure of a "claim" for res
judicata purposes.[16]

Lawyers and judges familiar with personal in-
jury cases, seeing the parallel between a negli-
gence action and a workers' compensation proceed-

[15] Vestal endorses the view that pragmatic considerations, espe-
cially trial convenience, should govern the determination of a "single
claim":

"Another approach might be to analyze the facts in terms of trial
convenience and the best use of the time of the judiciary. Judge Clark
suggests the use of such a pragmatic test, stating:

" 'The extent of the cause is to be determined pragmatically by the
court, having in mind the facts and circumstances of the particular
case. Such extent may be settled by past precedents; but the control-
ling factor will be the matter of trial convenience, for that is the
general purpose to be subserved by these procedural rules. Such
purpose should be considered not from the vantage point of the study,
but from the courtroom, looking at the facts as they will be presented
at the actual trial.' [Clark, Code Pleading (2d ed), p 137.]" Vestal, *Res
Judicata/Preclusion* (included as an appendix to Personal Injury
Annual—1969 [NY: Matthew Bender]), pp V-46—V-47.

[16] James and Hazard note that a narrow definition of what consti-
tutes a single claim may well be advantageous:

"Where, however, claims are factually quite distinct so that there
will be no overlap in presenting evidence to support them, much less
is to be saved by trying them together, or including them in a sin-
gle lawsuit to be tried separately. Indeed, trying them together
may cause confusion and prejudice. And an insistence that factually
distinct claims should all be included in the action may have other
disadvantages. For one thing it will tend to make the parties scrape
the bottom of the barrel to find and include possible claims which
they are not willing to have altogether cut off as a result of their own
affirmative conduct (in bringing suit), although the same parties may
be willing to let these claims drift if their hand is not forced. This
kind of compulsion, in other words, may tend to make parties litigate
their potential claims to the utmost." James & Hazard, Civil Proce-
dure (2d ed), p 543.

ing in that both are grounded in a personal injury, may be inclined to think in terms of the simplicity of one trial and the finality resulting from a lump-sum verdict and, in an effort to achieve the same neatness, to overlook the differences between the legislative scheme for compensating work-related injury and the common-law system for compensating other personal injury.

In a negligence action the trial unit is the accident. Usually that an accident occurred is undisputed—two cars collided, a person tripped. The contest centers on the cause of the accident (which car failed to yield, whether the floor was slippery) and whether the cause was attributable to a breach of duty (whether it was negligent to have failed to yield, whether a reasonable person would have mopped the floor). Litigation is focused on the facts of the accident and all claims relating to it must be joined. The effort is to determine who is at fault. Once that is determined the innocent or less culpable party is entitled to damages. He need not fit his injuries into pigeonholes.

In a negligence action, the trier is required to predict the likely future complications and damages and to ascertain a lump sum to compensate for past, present and future damages. There is no modification of the verdict even where the passage of time proves the prediction erroneous, and a second suit for damages resulting from the same breach is not permitted even if there has been a change in physical condition or other circumstance. In this context, the defendant is entitled to rely on the plaintiff's having presented all claims arising from the breach. He only expects to have to defend one suit.

In a workers' compensation proceeding that an accident occurred will also likely be undisputed.

But this is where the similarity ends. There is no door-opening issue similar to the determination of fault in a negligence action. No rights or liabilities can be determined by examining the accident. All that needs to be known about the accident is that it is work-related, and this is usually capable of ready determination. A worker who proves that he was injured in his employment must still prove that he suffers a compensable disability. The trier does not award a lump sum; awards are subject to modification as circumstances change. The employer does not expect that one hearing will finally resolve the claim; there may be, on the application of either party, countless hearings over the years.

Nevertheless, when a worker alleges a compensable disability, he is required to present all issues related to that claim. If he claims loss of industrial use of both legs, he must present all theories which support that claim. The employer may justifiably expect that his liability for the condition of the worker's legs will finally be determined unless circumstances change. But where the worker has suffered two compensable disabilities, he need not seek compensation in a single petition, even when the disabilities originate in a single accident or occurrence.

The two hearings in *Gose* seem like hearings in separate cases because two distinct claims were heard. In one the question was whether Gose had suffered loss of the industrial use of his right leg as well as his left, and whether that loss of the use of his right leg was traceable to his accident. In the other, the inquiry was whether Gose was insane and whether that insanity was due to his leg amputation or to the death of his brother or a physiological disorder.[17]

---

[17] No doubt Gose himself, or his lawyers, saw two distinct claims. This is relevant to proper application of the doctrine:

Although the Court asserts that application of civil litigation res judicata principles compels the result in this case, it does not consider how those principles have been applied in civil litigation. Recent cases in Michigan and elsewhere have placed great weight on differing factual bases for the two claims said to be one and on the extent of duplication of evidence in determining whether an action is barred by res judicata.[18] Application of

"By examining the motive of the plaintiff and the reasonable expectations of the parties, it may be possible to decide whether or not the second action should be allowed—stated in a different way, whether or not the plaintiff is guilty of proscribed repetitious litigation.

"It may be discovered that the plaintiff who was successful in Suit I is bringing the second suit because (1) he did not get the extent of recovery which he felt he was entitled to, (2) he is seeking different relief, (3) he believes that the second suit involves a factually different claim. If the motivation of the plaintiff is either (1) or (2) then it would seem that he is suing on the same claim. Only if he believes that this is a different factual situation, is there some ground for saying, under this approach, that he may be allowed to maintain the second suit." Vestal, fn 15 supra, pp V-47—V-48.

[18] In Sheridan Drive Ass'n v Woodlawn Backproperty Owners Ass'n, 29 Mich App 64; 185 NW2d 107 (1970), plaintiffs, whose property was contiguous to a road which in turn was contiguous to a lake, sought a determination of their riparian rights. The Court held that res judicata did not bar the suit though the question of backlot owners' rights of access to the road had previously been litigated:

"The evidence that established the existence of rights in Sheridan Drive is not the same that determines plaintiffs' riparian rights in the lake." Id., pp 68-69.

The Court utilized the test adopted in Rose v Rose, 10 Mich App 233, 236, 237; 157 NW2d 16 (1968):

"The test for determining identity of claims is set forth in 30A Am Jur, Judgments, § 365 [p 407]:

" 'In the application of the doctrine of res judicata, if it is doubtful whether a second action is for the same cause of action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other.' "

In Mango v Plymouth Twp, 33 Mich App 715; 190 NW2d 285 (1971),

civil litigation res judicata principles supports the conclusion that Gose has two distinct claims, separately litigable.

## D

For still another reason, Gose's claim is not barred. His claim that he is incurably insane was not adjudicated in the first hearing, nor was it abandoned. It was withdrawn with the specific request that no "decision [be] made in that regard". Had Gose wished to abandon that claim he would have had no need to withdraw it from consideration because he would have been indifferent to a ruling in the employer's favor. A lawyer for the employer was present when the claim was withdrawn. He could then have objected. Instead, he remained silent and thereby waived any right to assert prejudice in the future.

The defense of res judicata may be waived by the defendant. It is for his protection and he will

plaintiffs brought a mandamus action contending that a residential zoning ordinance was unconstitutional and seeking a permit to construct new commercial buildings on their property. In the alternative, plaintiffs sought a permit under the ordinance to repair the existing commercial buildings on their property. At a pretrial conference, plaintiffs abandoned their request for a permit for repairs. The ordinance's constitutionality was upheld. Plaintiffs' subsequent suit seeking a permit for repairs was held not barred by res judicata, despite plaintiffs' previous opportunity to litigate the total effect of the ordinance on their commercial property, because "it is clear that the facts and evidence necessary to attack the constitutionality of the ordinance are different from those necessary to establish plaintiffs' rights thereunder". *Id.,* p 718.

In *Collins v Metro-Goldwyn Pictures Corp,* 106 F2d 83, 86 (CA 2, 1939) (Clark, J., concurring), claims that a movie entitled "Test Pilot" infringed upon the copyright of a book entitled *Test Pilot* and constituted unfair competition by use of the same name, were found to be distinct and independent because of "the severability of the issues". Judge Clark in concurrence emphasized the differing factual bases of the claims and the different evidence needed to support the claims despite the fact that they both related to the release of the one movie.

See cases in fn 11, *supra.*

not be heard to assert it where he has failed to make proper objection to the splitting of a claim.[19] A similar principle applies under the General Court Rules in civil litigation.[20]

Had the employer voiced objection to Gose's withdrawing his insanity claim, Gose might have submitted the issue for a decision on the merits, or secured an adjournment in order to gather more proofs. He would have been warned that he might, by withdrawing the matter from adjudication, be said to be abandoning it altogether. Instead he was made to believe that there would be no barrier to his submitting the insanity claim at a later date should he so choose. The employer waived any defense based on res judicata.

## II

Louise Sanders injured her back on November 10, 1960. Her back condition forced her to cease working in April, 1963. During the next three years she underwent several operations. From April, 1963 to October, 1965 she received workers' compensation benefits voluntarily paid.

In September, 1967 she petitioned for benefits alleging permanent and total loss of industrial use

[19] "When any of the following circumstances exists, the general rule of § 61 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

"(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement Judgments, 2d (Tentative Draft No. 5, 1978), § 61.2(1), p 184.

"The parties to a pending action may agree that some of the claim shall be withdrawn from the action with the understanding that the plaintiff shall not be precluded from subsequently maintaining an action based upon it. The agreement will normally be given effect." *Id.,* comment a, p 186.

See *Mango v Plymouth Twp, supra,* fn 18.

[20] See *Rogers v Colonial Federal Savings & Loan Ass'n of Grosse Pointe Woods,* 405 Mich 607; 275 NW2d 499 (1979).

of both legs. Testimony at the hearing showed that Sanders suffered a back injury in the course of her employment, had several operations as a result, and at the time of the hearing in 1968 could not stand for more than five minutes or walk significant distances without experiencing severe back pain and leg spasms.

The hearing referee found that Sanders' "back problem" was an "occupational disease disability" and awarded 500 weeks' benefits. He further found that she "failed to sustain the burden of proof to establish total and permanent disability as defined by the statute". She did not appeal.

Sanders' 500-week general disability benefits ran out November 11, 1972. On December 6, 1972, she petitioned for further benefits, claiming total and permanent disability due to the loss of industrial use of both legs.

The hearing referee found her to be "totally and permanently disabled through the industrial loss of use of both legs".

The WCAB held that the issue of total and permanent disability was litigated in 1968 and, absent a change in Sanders' physical condition, the issue could not be relitigated. It found no change in her condition from 1968 to 1974. It also rejected her claim that a change in the law, like a change in facts, precludes operation of the doctrine of res judicata and therefore reversed.

The Court of Appeals vacated the WCAB's order and remanded for reconsideration.[21]

---

[21] *Sanders v General Motors Corp,* 80 Mich App 190; 263 NW2d 329 (1977).

The Court of Appeals assumed the WCAB's finding of no change in condition was correct, but held the WCAB nevertheless misapplied the doctrine. It saw two possible interpretations of the original compensation award. The referee might have found that Sanders was totally disabled but that a determination of permanency was premature. The fact that the disability persisted through 1972 was further

A

Justice WILLIAMS states that only a change in Sanders' physical condition would permit reopening the question whether she lost the industrial use of her legs and that since the WCAB found there was no such change it cannot be reopened. The Court states that it agrees with his result.

The Restatement provides that where the issue is one of law and a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws there is an exception to the general preclusion resulting from prior litigation:

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

\* \* \*

"(b) The issue is one of law and \* \* \* (ii) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Restatement 2d, Judgments (Tentative Draft No. 1), § 68.1, p 170.

---

evidence of permanency and might have satisfied the second referee on the issue.

Another possible interpretation of the decision explaining the first award is that the referee found a total disability but did not find a "loss of industrial use of both legs" as he conceived of that statutory phrase. At the time of Sanders' first hearing, the principle that a *back* injury which prevents use of the legs could qualify as a "loss of industrial use of both legs" had not been fully accepted nor consistently applied. If this were the basis of decision, the majority opinion in *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975), would bar relitigation of the identical claim under a new legal standard.

The Court of Appeals could not determine which was the actual basis of decision and so adopted the interpretation most favorable to Sanders. It reversed and remanded to the WCAB.

Neither the Court nor Justice WILLIAMS indicates
why this general exception[22] to the rule of preclu-
sion should not be given operative effect in work-
ers' compensation cases.

Justice WILLIAMS relies on *Hlady*[23] where a
majority of the Court concluded in dictum that a
change in law does not eliminate the bar of res
judicata. In a concurring opinion I responded to
that dictum.[24] *Hlady* did not reflect any considera-
tion of the authorities which recognize exceptions
to the general rule of preclusion. It is therefore not
a persuasive basis for dismissing, without further
discussion, Sanders' claim. The cases relied on in
*Hlady* held only that the general doctrine of res
judicata precludes relitigation of issues of law as
well as issues of fact and do not consider or
purport to decide whether an exception may be
justified if there is a *change* of law. Those cases do
not address the question whether the exceptions to
the general rule of preclusion apply to issues of
law as they do to issues of fact.

Justice WILLIAMS writes that "[a]bsent a change
in claimant's *physical condition,* these [1968] find-
ings · are res judicata". (Emphasis supplied.) In
*Theodore v Packing Materials, Inc,*[25] decided after
*Hlady,* this Court recognized that a change of

[22] Casad, Res Judicata, § 5-4, p 130; Vestal, *supra,* pp 247, 413.
*Christian v Jemison,* 303 F2d 52, 55 (CA 5, 1962), where it was
claimed that the suit was barred by res judicata because of an earlier
identical suit brought by one of the plaintiffs:

"The Supreme Court has many times declared 'the general rule
that res judicata is no defense where between the time of the first
judgment and the second there has been an intervening decision or a
change in the law creating an altered situation.' *State Farm Mutual
Automobile Ins Co v Duel,* 324 US 154, 162; 65 S Ct 573; 89 L Ed 812
(1945); *Blair v Comm'r,* 300 US 5; 57 S Ct 330; 81 L Ed 465 (1937)."

[23] *Hlady v Wolverine Bolt Co,* fn 21 *supra.*

[24] *Id.,* p 384.

[25] *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d
255 (1976).

circumstances other than a change in physical condition could be a proper basis for reopening and modifying an award and held that the doctrine of res judicata did not bar reopening where there had been a change in the status of a dependent: "Just as one's *physical condition* may change with the passage of time, so too can one's *status* vary from one day to the next." (Emphasis in original.)

I said in *Hlady:*

"Workmen's compensation disability benefits, like social security and unemployment compensation benefits, are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. A claimant's entitlement to such benefits depends on the circumstances at the time of application and payment.

"A change in law, statutory or judge-made, like a change in fact, can effect a change in circumstances justifying, upon application of worker or employer, an award of benefits or termination or suspension of benefits previously awarded.

"The right to workmen's compensation disability benefits depends on whether, at a given point in time, the claimant is within the statutory intendment. The scope of that intendment is subject to change. A determination that a claimant is not today entitled to disability benefits does not preclude reexamination of his entitlement should the facts or the law, by legislative amendment or court decision, change tomorrow."[26]

Recognizing an exception for a change in law would not be a one-way street favoring workers alone. This Court, in *Redfern,*[27] recently overruled

---

[26] *Hlady v Wolverine Bolt Co,* fn 21 *supra,* p 391.

[27] *Redfern v Sparks-Withington Co,* 403 Mich 63; 268 NW2d 28 (1978).

the Court of Appeals *Sprute* [28] test which had been applied by the WCAB in a number of cases both to award and to deny benefits for incurable insanity or imbecility. An employer or its insurance carrier should not be required to continue to pay benefits after an intervening decision establishes that an erroneous rule of law was applied in making an award. Like a change in physical condition or status, such a decision should relieve the employer of the further obligation to pay benefits.

## B

The testimony offered in support of the first petition for compensation indicated that Sanders injured her back at work in 1960, that the injury was aggravated by twisting and turning at work, that she had to cease working in 1963 and undergo several operations, and that at the time of the hearing in 1968 she could not stand, walk, or sit for long periods of time. The referee found that although she was totally disabled she did not prove a loss of industrial use of both legs.

In 1963 this Court decided *Paulson.*[29] Paulson could not walk without experiencing severe pain in his lower abdomen. This Court held that he could recover for loss of industrial use of both legs although there was no proof of direct injury to the legs.[30]

Sanders' injuries were not squarely within the perceived holding of *Paulson.*[31] The WCAB confined *Paulson* to cases where the disability was

---

[28] *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574; 189 NW2d 89 (1971).

[29] *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963).

[30] *Id.,* p 319.

[31] Paulson's disability was intimately related to the use of his legs:

"Testimony of the treating physician * * * assigned the disability to the presence of a fistula tract, with pain resulting from any pressure being borne by either leg." *Id.*

traceable to the use of the legs per se. In *Lockwood*,[32] the WCAB had found that Lockwood, who, through industrial related hearing loss, suffered disabling vertigo whenever he moved or walked, was not within *Paulson* because his disabling symptoms were not traceable to use of the lower limbs per se but "[were] due to an impairment of the balance mechanism in his inner ear which [was] aggravated by any movement and/or noise".

The Court of Appeals reversed the WCAB in 1970 and that decision was approved by this Court in 1974 in *Burke,* which amplified and consolidated the tests in *Paulson* and *Lockwood* to include as a loss of industrial use of both legs a case where the use of a leg or legs triggers an employment-related injury or malady in another part of the body that causes pain or other condition that prevents use of both legs in industry.[33] Thus, *Paulson* had not fully evolved to include Sanders' asserted condition at least until 1970; a change in law occurred after the initial 1968 determination.

## C

### The instant case is distinguishable from *Hlady*

Also, his right leg became numb when he attempted to walk.

Sanders suffers pain in her back when she sits as well as when she stands and walks. The muscle spasms which she suffers in her legs do not cause her pain.

[32] *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970).

[33] *Burke v Ontonagon County Road Comm,* 391 Mich 103, 114; 214 NW2d 797 (1974). This Court said:

"There is permanent and total loss of industrial use of both legs where, *inter alia,*

"1. An employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry.

"2. The use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry."

and should not be governed by the majority dictum of that case.

Hlady lost four fingers and recovered schedule benefits for 100 weeks. When those benefits ran out she further petitioned for benefits due to loss of industrial use of her hand and for general disability. She was denied benefits because she failed to establish "any further disability over and beyond the natural consequences of the loss of her four fingers on the right hand". The Workmen's Compensation Commission reversed, finding "that the plaintiff has lost the industrial use of her right hand as the result of her amputations". This Court reversed because, "[n]otwithstanding plaintiff claimed that the amputation of her fingers resulted in disabling 'sequelae' and 'general disability', the commission found none except disability which normally follows such amputations".[34] Hlady did not challenge the legal principle that compensation beyond the schedule benefits could only be had where the loss was greater than normally follows loss of the fingers.

In 1967, 18 years later, Hlady again petitioned for benefits. There was no change in her physical condition, only a change in the law—in 1957 this Court had decided *Van Dorpel*[35] which allowed compensation for loss of use or general disability even where the disability normally follows such amputations.

This Court held Hlady's second petition barred by res judicata:

"Plaintiff may not concede an issue, necessarily determinative of and included in the judgment of this Court, and then, after another has successfully raised the issue

---

[34] *Hlady v Wolverine Bolt Co,* 325 Mich 23, 25; 37 NW2d 576 (1949).

[35] *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957).

she did not wish to contest, ask the Court again for relief. The doctrine of res judicata bars this from happening. Mary Hlady could have as easily raised this issue as Peter Van Dorpel. It was, in fact, incumbent upon her to do so if she wished to avail herself of that interpretation."[36]

It is one thing to say that a claimant may not frame a factual issue so as to concede a point of law, litigate that factual issue through the courts without contesting the law, lose on the factual issue which determination necessarily included the conceded point of law, and then attempt to relitigate almost two decades later when another party has succeeded in changing the law. It is quite another thing to hold that a claimant who petitioned for benefits advancing a legal interpretation later accepted by the courts, whose petition was awarded upon another theory and who chose not to appeal that favorable award, is barred from later petitioning for further benefits when the interpretation previously advanced becomes law.

The rationale of *Hlady,* that a plaintiff should not be able to concede a point of law in one litigation and later obtain relief when another has successfully challenged and worked a change in the law, has no place in this case. Sanders' original petition alleged total and permanent disability attributable to her legs, back and nervous system. She offered evidence that any significant sitting, standing or walking caused her leg spasms and disabling back pain. Thus, implicitly, she made the claim, later accepted by the Court of Appeals in *Lockwood* and this Court in *Burke,* that a leg-related disability associated with another part of the body can constitute loss of industrial use of both legs even though the disability is also aggra-

[36] *Hlady v Wolverine Bolt Co,* 393 Mich 368, 380; 224 NW2d 856 (1975).

vated by activities other than walking and even though it is not related to the legs per se.

Hlady's claim was barred because she failed to raise the issue. Sanders' claim is to be barred because she *did* raise the issue. Had Sanders initially petitioned for and been granted total disability benefits due to general disability and thereafter, as is often done, petitioned for continued benefits based on the loss of industrial use of both legs, she would not have been required to show a change in physical condition since the award of general disability benefits.

The doctrine announced in *Hlady* should not be extended to this case. When Sanders' 500 weeks' benefits for total disability ran out and she repetitioned for benefits based on her original claim for loss of industrial use of both legs, her claim should have been judged by the legal standard operative at the time of her second petition and she should not have been penalized because an earlier petition upon the same claim failed under a different and more restrictive legal standard.

## D

The referee at the first hearing determined that Sanders' evidence did not establish loss of industrial use of both legs. He did, however, find total disability due to an occupational back disability. Sanders did not appeal this determination.

It might be argued that, having raised the issue of total and permanent disability, Sanders was obliged to appeal an unfavorable determination on that issue. However, it is unrealistic to expect a worker advancing one theory, rejected by the referee, who secures benefits on a different theory to appeal that favorable determination of a compensable disability and entitlement to compensation.

The Restatement provides that an issue resolved

in a previous litigation should not be foreclosed in a subsequent litigation where "the party sought to be bound did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding".[37] "The lack of incentive to appeal is a factor to be considered in determining whether the party sought to be bound had a 'full, fair opportunity to litigate.' "[38] An example given by the Restatement is where "the amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair. * * * [C]onfined within proper limits, discretion to deny preclusive effect to a determination under the circumstances stated is central to the fair administration of preclusion doctrine."[39]

The first decision denying Sanders benefits for total and permanent loss of industrial use awarded her general disability benefits. Thus, in holding that she had not established entitlement to total and permanent disability benefits, the referee denied her no current compensation other than differential benefits payable by the Second Injury Fund.

---

[37] Restatement Judgments, 2d (Tentative Draft No. 1, 1973), § 68.1, Comment j, p 183.

[38] Casad, *supra*, § 5-58, p 226.

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

"(a) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment by an appellate court in the initial action." Restatement Judgments, 2d (Tentative Draft No. 1), § 68.1(a), p 170.

"As noted in § 68, Comments h and i, the availability of appellate review for the correction of errors has become critical to the application of preclusion doctrine. If appellate review is unavailable because the party who lost on the issue obtained a judgment in his favor, the general rule of § 68 is inapplicable by its own terms." *Id.*, Comment (a), p 171. See fn 42.

[39] Restatement Judgments, 2d (Tentative Draft No. 1, 1973), § 68.1, Comment j, p 183.

If Sanders had appealed she would have risked reversal of the award and, at the very least, would have been further delayed in receiving general disability benefits.[40] Appellate litigation is costly, time-consuming and uncertain. Sanders may have urgently needed the weekly general disability benefits awarded. She may not then have had the fortitude or the wherewithal to carry the battle forward to the Court of Appeals and this Court.[41] Foreclosing her from relying on subsequent appellate decisions because she did not do so ignores that she may not have prevailed on appeal simply because both the Court of Appeals and this Court may not then have seen the merits as they were to be ultimately seen in *Lockwood* and *Burke* and may have denied leave to appeal.[42]

There is still another factor which should be weighed in deciding whether the second petition should be barred. Although it does appear, as Justice Williams points out, that the primary focus at the first hearing was on the seriousness of her incapacity—whether she had suffered a "total loss"—rather than its permanence, the referee did not identify what led him to conclude that Sanders had failed to establish permanent and total loss of industrial use. Having in mind the practice of frequently making that decision as of the expira-

[40] The statute (MCL 418.862; MSA 17.237[862]) requiring an employer to pay 70% of benefits awarded pending completion of any appeal had not then been enacted.

[41] The restrictive interpretation given by the WCAB to Paulson (see fns 31 and 32 and accompanying text) made it unlikely that a more favorable decision would have been obtained except from the Court of Appeals or this Court.

[42] I can readily visualize Court of Appeals judges or Justices of this Court declining to review because the referee had awarded all the benefits that the claimant could currently obtain (other than differential benefits) without considering a possible preclusionary effect after expiration of the 500 weeks. This case is thus analogous to the situation where a party cannot as a matter of law obtain review of an adverse judgment by an appellate court—another exception to the general rule of preclusion recognized by the Restatement. See fn 38.

tion of the 500-week period and that the first decision in Sanders' case on the issue of total and permanent loss of use was made earlier than it is often made, there is no reason to suppose that the referee recognized that his decision might be final and preclusive.

As a result of his decision, Sanders would receive as general disability benefits precisely what she would receive had she prevailed on the larger question, except that she would not receive differential benefits from the Second Injury Fund. The referee may have seen his decision as interlocutory and may, despite what appears to be the focus of the inquiry, have had doubts about permanence, which is a prediction more readily made after the passage of time.

The factual determination of permanency is a prediction of the likely duration of a disability. One who is found to have lost the industrial use of both legs is conclusively presumed to be totally and permanently disabled for 800 weeks. It is understandable that a referee would make such a finding cautiously.

In predicting the duration of a disability, a lengthy period of past disability is a fact to be considered and may be persuasive. A disability of four years presents a different factual circumstance than a disability of nine years. The later assessment is of a disability which has persisted. Thus, passage of time is itself a change of circumstances justifying a redetermination. Unless one can say with greater certainty than appears on this record that in finding against Sanders the referee found that she had not suffered a total loss, she is entitled to reassessment of her claim under the doctrine which permits relitigation where circumstances have changed.

The doctrine of res judicata expresses a policy which is best served by consideration of the partic-

ular circumstances of the case at hand. Having in mind

—that the first determination occurred earlier than might be expected and that because general disability benefits were awarded all that was then at stake was differential benefits,

—the disincentives to appeal: delay, possible reversal of award, need for the money,

—the likelihood there would have been no appeal because leave would have been denied,

—the possibility that the referee viewed his decision as interlocutory and not final,

—the referee's failure to indicate whether his decision was because of insufficient proofs on permanency or on total loss,

—that if on permanency the passage of time is itself a change of circumstance,

—that if on total loss an intervening decision of this Court changed the legal climate in which that decision should be made,

I would hold that in this case the policies which the doctrine of res judicata seeks to serve do not require that Sanders be denied benefits which the testimony and the referee's finding at the second hearing indicate she is entitled to receive.

Finality is desirable, but the nature of workers' compensation is such that it is not a controlling consideration. Employers, their insurance carriers, employees, and their dependents necessarily live in a world of non-finality. Except possibly for compensation payable for a fixed number of weeks for a specific loss, an award or denial of benefits may always be reopened if there has been a change in physical condition, status or other circumstances. Workers' compensation is income maintenance payable periodically, and when the factors giving rise to the entitlement or justifying denial change, the result, too, should change.

I would affirm both *Gose* and *Sanders*.